MOBILE & OHIO RAILROAD CO. *v.* JOSEPH H. CARPENTER.

[61 South. 693.]

1. EVIDENCE. *Declarations as to pain. Master and servant. Action for injuries. Argument. Comment on witness. Negligence.*

Declarations of present pain and suffering, no matter when or to whom made, are admissible as original evidence in all injuries where pain and suffering constitute a question involved in the case.

2. MASTER AND SERVANT. *Frame of mind of servant. Evidence. Injuries.*

Where, in a suit for personal injuries against a railroad company caused by the negligent handling of defendant's engine while switching, plaintiff's declaration alleged that the servants of defendant handling the engine were in a "reckless and angry state of mind" and that the engine was handled in reckless disregard of consequences, it was proper for the court to admit testimony of such conduct and expressions as would show the frame of mind of the men while doing the switching, so that the jury could judge whether the act resulted from such carelessness and recklessness.

3. TRIAL. *Argument. Comment of counsel on witnesses.*

In a suit for personal injury against a railroad company the remarks of plaintiff's counsel in his concluding argument that "If a statement was made by a railroad man as to how and where an injury happened, every railroad man from Mobile to St. Louis would swear it to be that way," etc., while improper was not reversible error.

4. DAMAGES. *Negligence. Personal injury. Measure of damages.*

In a suit for personal injury the measure of compensatory damages, is such an amount as will fully compensate the plaintiff for the injuries sustained, including pain and suffering endured on account thereof, loss of time and earning capacity caused by the injury and permanent injury, if any, such amount to be diminished in proportion to the amount of negligence attributable to him.

5. MASTER AND SERVANT. *Negligence in switching cars.*

Where a servant of a railroad while loading a car on a sidetrack with logs, was injured by the negligent backing of cars onto

said sidetrack, which caused the loading machinery to fall upon him, he was entitled to recover for the injuries sustained.

5. TRIAL.  *Conflicting evidence.  Peremptory instruction.*

  A peremptory instruction should not be given where there is a clear conflict of evidence on a material question in the case.

APPEAL from the circuit court of Prentiss county.

HON. J. H. MITCHELL, Judge.

Suit by Joseph H. Carpenter against the Mobile & Ohio Railroad Company.  From a judgment for plaintiff, defendant appeals.

This is an appeal from a judgment for the plaintiff for two thousand dollars for injuries received by him while in the employ of the defendant railroad company. The opinion states the facts.

In the concluding argument of counsel for plaintiff he used the following language, to which exceptions were at the time taken:  "If a statement was made by a railroad man as to how and where an injury happened, every railroad man from Mobile to St. Louis would swear it to be exactly that way; if one of them would say a spike was driven in the third tie on a trestle, every railroad man would swear it was that way; if one of them should swear a man was hurt by a certain post, every railroad man would swear it was that way."

The action of the court in granting the following instructions at the request of the plaintiff is also assigned as error:

"No. 1. The court instructs the jury, for the plaintiff, that if they find for the plaintiff they shall award him damages sufficient to compensate him in full for the injuries, if any, as shown by the evidence to have been sustained by him; also for the pain and suffering, if any, shown by the evidence to have been endured by him in consequence of the injury; also for the loss of time and loss of earning capacity, if any, shown by the evidence to have been sustained by him on account of the injury;

and also to compensate the plaintiff in full for the permanent damage, if any, shown by the evidence to have been sustained by him in consequence of the injury: Provided, however, that if the jury believe from the evidence the plaintiff in his conduct at the time of the alleged injury was guilty of contributory negligence, then the sum total of the damages he would otherwise be entitled to shall be diminished in proportion to the amount of negligence attributed to him.

"No. 2. The court instructs the jury, for the plaintiff, that if they believe from a preponderance of the evidence that the defendant company by its employees negligently backed its cars on the switch where plaintiff was engaged in the performance of his duties in loading logs on the cars as alleged, and that as a result of said negligence plaintiff sustained personal injuries, you will find for the plaintiff, and assess his damages in such amount as you may believe from the testimony he sustained, not to exceed the amount sued for."

*W. D. Anderson,* for appellant.

Over the objection of appellant, W. A. Tims, appellee's kinsman, and in whose home appellee lived, was permitted to testify as follows: '

Q. Mr. Tims, what has been the condition of Joe Carpenter since he got hurt, with reference to pains? Has he been in your home since then? A. Yes, sir, that has been his home since then.

Q. What do you know of his suffering with these injuries? A. In what way?

Q. Any way. A. I just know from the complaints he makes. (Objected to. Overruled as to complaints.)

Q. At what times have you heard him complain? A. I have heard him complain a number of times about it, at different periods.

Q. Well at what time has there ever been any complaints made to you or in your hearing at night? (Objected to these statements as being indefinite as to time.)

Q. Since the injury? (Overruled, to which the defendant then and there duly excepted at the time.) A. I have heard him through the night groaning and turning over and being restless.

Q. How often and to what extent do you hear that Mr. Tims? A. Well, I will have to make you a little explanation to tell you about that.

Q. All right. A. This summer my family were camping out there and we were out in the bend and this wagon had a platform under there that Joe slept on. I was at Rienzi about half the time, and about half the time out there. I had a cot on the side of the wagon and I slept there in a few feet of him, and at different times in the night he would disturb me and wake me up by his groaning.

Q. Mr. Boone (appellant's attorney), what month was that? A. That has been since the first of July. We have been out there until about two weeks ago. (Objected to. Objection overruled, to which the defendant then and there duly excepted at the time.)

Q. Mr. Tims, what complaints have you heard prior to that time? A. I have heard complaints of his head hurting him before that time.

Q. How often and when, Mr. Tims? A. Well, I couldn't say how often; but any time he seems to get warm, he would seem to complain about his head hurting. I have advised him not to get warm.

Dr. Googe, over the objection of appellant, was permitted to testify as to complaints made by the appellee, without fixing the time definite when such compaints were made.

The action of the court, in admitting this testimony, which must have great weight with the jury, is assigned as error.

Now we want the court to get clearly in mind the exact circumstances under which these complaints of suffering were made by the appellee, as testified to by the witness Tims.

The alleged injury occurred on the 13th of August, 1910. The declaration in this case was filed on the 22nd of August, 1910. The last trial took place at the October term, 1911. There had been a trial, resulting in a hung jury before. It will be seen, therefore, that the expressions of pain and suffering by the appellee, testified to by the witness Tims, took place after the bringing of this suit, and some of them, evidently after the first trial, and some (and those expressions must have been most potent with the jury) during July, 1911, while Mr. Tims' family, including the appellee, were camping near Jancito (when the political gathering was held there.)

We are aware of the case of *Mississippi Central Railway Co.* v. *Turnage,* 95 Miss. 854, 49 So. 840, in which it was held that in an action for personal injury, witnesses may testify to declarations and expressions of present pain and suffering by the person injured, even though such declarations and expressions, have occurred several months prior to the trial. We have no quarrel with the court on account of the principle therein announced. However, that case is not decisive of this question. In reviewing the authorities in the opinion in that case (p. 861), the court says:

"In the case of *Jones* v. *Portland,* 88 Mich. 598, all that was decided was, that when a physician had been employed for the express purpose of making that physician a witness in the suit, exclamations of pain made by the injured party during the examination cannot be testified to by the physician so employed for the express purpose. The holding in the case just cited is manifestly correct since the court held merely that one could not be employed for the purpose solely of making testimony, and thus make admissible declarations of pain and suffering made to the party so employed, etc."

To sustain the decision of the court of *Mississippi Central Railway Co.* v. *Turnage, supra,* 3 Wigmore on Evidence, pp. 2210 and 2211, sections 1718-1719, are cited.

In that same chapter of Wigmore, page 2214, section 1721, will be found a discussion of the question here involved, and that is whether witnesses may testify to declarations of pain and suffering, *post litem motam.* The conclusion of the author is that:

"The fictitious and untrustworthy nature of a great deal of such evidence, in personal injury litigation, is a matter of common knowledge, and some power to exclude it ought to exist. Its exclusion ought to depend on the circumstances of each case, and to be left to the trial court's discretion. A flexible rule of this sort is indicated by some courts."

The arthor also says that if the analogies of other exceptions to the incompetency of hearsay evidence be followed: "All statements made *post litem motam* are to be rejected as untrustworthy."

We ask the court's consideration of the reasons given by Wigmore, for the admission of hearsay statements and declaration of pain and suffering. They are not admitted on the ground that they are a part of the *res gestae,* but out of necessity; such expressions and declarations are admitted as verbal acts; as spontaneous expressions of pain and suffering. 3 Wigmore, pp. 2228-2229, sections 1718 and 1719.

Our judgment is, our court has gone far enough in the Turnage case. The question here is, will the court go a step further and hold that declarations of pain and suffering made by the injured party, after the bringing of his suit, and even after there has been one trial of his case, may be testified to by witnesses who heard them? Certainly under such circumstances, there is often a motive on the part of the party injured to make false declarations and expressions of pain and suffering. In other words, every incentive to make testimony for himself. If, as held in the Turnage case, the examining physician, who examines the injured party for the purpose of being a witness, will not be heard, why should

other witnesses be heard to testify to such declarations and expressions made after the bringing of the suit, with every inducement on the part of the injured party to falsify? The court will find that the testimony of Mr. Tims, and Dr. Googe along this line, must have been very influential with the jury. Dr. Googe's testimony, as to the appearance of appellee's wounds immediately after he claimed to have received them, left it in doubt whether he had really been seriously wounded. However, his declarations of pain and suffering testified to, made after the bringing of his suit, and just a short time before the last trial, must have removed that doubt from the minds of the jury.

13 Cyc. 200-201, states the principle involved thus: "Declarations of pain and suffering made after the controversy has arisen, or suit has been brought, are not ordinarily admissible," citing: *Mott* v. *Detroit, etc., R. Co.*, 120 Mich, 127, 99 N. W. 3; *Laughlin* v. *Grand Rapids St. Ry. Co.*, 80 Mich. 154, 44 N. W. 1949

Over the objection of appellant's attorneys, the court permitted the appellee Carpenter, and the witness Tims, to testify as follows, with reference to the conduct of the employees in charge of the local freight trains, whose alleged negligence caused the injury:

From the testimony of Carpenter:

Q. What frame of mind were those servants in (referring to the conductor and flagman)? A. They were rough, they were mad like they had made some bad switches up there some way and were rather cursing around about it, and they were rough. (Objected to. Objections overruled, to which action of the court, the defendant then and there excepted to.)

From the testimony of E. A. Tims:

Q. Mr. Tims, do you remember that occasion; do you remember what those servants, what frame of mind they were in at the time they were doing the switching on that occasion, the railroad servants? A. I don't except one

man, the conductor, Mr. Jackson. It seems he had to take a brakeman's place. He was out on top of a car that came on down, and he seemed to be very much out of humor by some brakeman not being at his post and he was swearing about it. (To which answer the defendant objected. Objections overruled, to which the defendant then and there duly excepted at the time.)

This swearing, etc., by the railroad employees is claimed to have taken place shortly before the alleged injury. Now what casual connection could there be between this swearing and rough conduct testified to and the alleged injury? Were the jury authorized to infer from that, that these employees were careless of the rights of appellee? Does the fact that a railroad employee swears and is rough in his manner, mean that he is careless of the rights of others—is negligent in the performance of his duties? Doubtless many railroad men swear and many are otherwise rough spoken, but surely that does not mean that they are not competent for the performance of their duties. The only purpose this testimony could possibly answer would be to prejudice the jury against the railroad company. It doubtless had this effect. It was calculated to have that effect. It was wholly irrelevant to the issue involved. In suits of this kind, railroads have burdens enough to carry, without being loaded down with such irrelevant and prejudicial testimony as this. We contend that this error of the court alone is sufficient to reverse this case. Swearing or bad temper of conductor and flagman could not influence the engineer who was handling the movement of train; swearing about the brakesman's conduct did not show bad feeling towards plaintiff and the swearing was not shown to have had anything to do with the accident.

In his closing argument to the jury, Mr. Cunningham, appellee's attorney, over the objection of appellant, used the following language, which will be found in the record

embodied in a special bill of exceptions, which bill of exceptions is as follows:

"Be it remembered that on the trial of this case, during the concluding argument of J. A. Cunningham, for plaintiff, he argued to the jury (in arguing the similarity of the testimony of defendants servants, and the universal leaning toward the company) that if a statement made by the railroad man as to how and where an injury happened, every railroad man, from Mobile to St. Louis, would swear it to be exactly that way; that if one of them would say that a spike was driven in the third tie on a trestle, every railroad man would swear it was that way; that if one of them should swear a man was hurt by a certain post, every railroad man will swear it was that way. Defendant's attorneys excepted to such argument, and asked the court to exclude the same, which exception and objection, the court overruled," etc.

The question here involves the application of the principle, so ably and forcibly stated by Judge SIMRALL in *Perkins* v. *Guy*, 55 Miss. 153 (O. C., pp. 182-183), in this language:

"A jury trial must be conducted according to the law of the land, and should be guarded by the court from all improper influences, so that the finding of the jury may be true responses to the issues, according to the law and evidence. Litigants have a constitutional right to appear and to be represented by counsel, and the fullest liberty and range of argument should be allowed; but within no allowable latitude is it permissible to state facts—and comment on them in argument—which are not before the jury in testimony. Such is not protected by the privilege of counsel and the fullest liberty of speech.

"Within the limits of testimony, the right of argumental illustration and comment is free. But that freedom does not extend to the assumption of facts not in evidence, as the bases of argument, to the prejudice of the adverse party. It is the duty of the presiding judge,

to whom is intrusted the supervision of the trial, *sua sponte,* to interpose, especially so if attention is called to the impropriety. *Mitchum's case,* 11 Ga. 633; *Berry's case,* 10 Ga. 511.

"In *Dickerson* v. *Burke,* 25 Ga. 227, it is declared to be the duty of the court to arrest any argument not based on the evidence."

The requirement that counsel, in arguing his cause to the jury, shall confine himself to the issue involved and the evidence adduced, is nothing more than guaranteeing to the parties litigant, a fair and impartial trial, according to the law and the testimony. This principle is illustrated by numerous cases, both civil and criminal, decided by our court. We refer only to *L. N. O. & T. R. R. Co.* v. *Van Eaton,* 14 So. 267; *Martin* v. *State,* 63 Miss. 505; *Whit* v. *State,* 87 Miss. 564.

The cases on this subject up to a recent date will be found in the chapter on "Trial" in 38 Cyc. 1479-1499 inclusive. We call the court's attention, specially, to note 80 on pages 1494 and 1495, in which numerous cases are cited, as illustrating the application of the rule in personal injury cases; and to page 1499, the paragraph of the text headed: "Appeals to prejudice against corporations as such," and note 30 under that text, on page 1500, headed: "Remarks held to authorize reversal."

*Cuningham & Berry,* for appellee.

Learned counsel for appellant urges with much force assignment of error based on the admission of the testimony of W. A. Tims and Dr. Googe as to complaints or expressions of pain and suffering made in their hearing by appellee after the injury in question. The record shows that each of these witnesses testified to appellee's expressions of present pain and suffering endured by him, which we think entirely competent, and properly admitted by the court below. We deem this doctrine too well established in this state and too generally accepted

to require any voluminous citation of authorities to sustain the action of the court below. We cite *Mississippi Central R. R. Co.* v. *Turnage,* 49 So. 840, which very thoroughly analyzes the law of this question and takes a position which warrants the admission of the testimony. We quote from the opinion above cited, to-wit: ''Whether this character of evidence be classed as exceptions to hearsay, or as independent and original testimony, its admissibility is beyond question.''

Numerous authorities are cited by the court on rendering the opinion in the above cause, and quotations from Wigmore are there set out. 3 Wigmore on Evidence, pp. 2210 and 2211, sections 1718 and 1719; also from the case of *Travelers Ins. Co.* v. *Mosley,* 8 Wakl. 397, 19 L. Ed. 437, the court quotes the following from page 440, to-wit:

''Whenever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings are original and competent evidence. Those expressions are the natural reflexes of what it might be impossible to show by other testimony. If there be such other testimony, this may be necessary to set the facts thus developed in their true light to give them their proper effect. As independent, explanatory, or corroborative evidence, it is often indispensable to the due administration of justice. Such declarations are regarded as verbal acts, and are as competent as any other testimony when relevant to the issue. Their truth or falsity is an inquiry for the jury.''

The principles announced in the above cause put to rest the contentions of appellant and we deem it unnecessary to cite further authority on the subject. The language quoted by counsel for appellant from 3 Wigmore on Evidence, p. 2214, section 1721, and relied upon to sutain their position, rather, we think, sustains the ruling of the court below.

There is absolutely nothing in this record to bring this testimony in the same category with that discussed and

ruled upon in *Jones* v. *Portland,* 88 Mich. 598, the point relied upon in that case, by counsel here, being the inadmissibility of the testimony in the pending trial. No such condition exists in this case.

The contention is made that the trial court erred in admitting testimony showing the frame of mind of the servants while doing the switching, for the reason that no relation is shown between the frame of mind and the act complained of. It is cetrainly overlooked that the declaration alleges that those servants were in a reckless state of mind and that as a result of this recklessness the car was backed upon appellee. Being charged with recklessness in the commission of this act (this particular part of the switching) their frame of mind while doing switching on the same yard on the same occasion and just prior to the said injury is an almost inseparble element for consideration in this case.

This condition of mind can be inferred from the character of the act itself, but if other expressions or acts preceding, or accompanying the act, can be shown to indicate the frame of mind of the actors, it is very helpful in judging whether or not the act was committed as a result of recklessness or wilfulness.

It is not alleged in the declaration that these servants exercised any malice toward appellee, nor is it now contended, but that they were reckless. The testimony, therefore, admitted by the trial court was entirely proper. Authorities sustaining this position are abundant.

An able discussion of the principle sustaining this view is found in 1 Wigmore on Evidence, pp. 299 to 302, section 242. Also McElvy on Evidence (Hornbook Series), pages 207-8, section 140, and notes thereunder, from which we quote the following:

"Where a condition of mind is involved, the court re-. lies upon and admits as evidence what all men are accustomed to rely and act upon. The mind betrays its condition in manner and speech, and upon this must rest.

the conclusion of others with reference to it. It consti-tutes orignal evidence and not hearsay.''

We think the testimony complained of admissible, even as a part of the *res gestae,* but whether considered as a part of the *res gestae,* the same is still admissible not only under the authorites cited here next above, but also by the broad principles laid down by the authorites cited in answer to the first assignment answered here.

We do not think the deductions drawn in the language of the attorney for appellee capable of the construction placed upon them by counsel for appellant. Conceding them subject to criticism from a standpoint of reasoning, it was perfectly apparent to the jury to be mere deduc-tions sought to be made by the speaker from the evi-dence under discussion. This certainly could not have unduly influenced the jury in making up their verdict.

The authorities cited do not sutain the views they have been quoted to support. In refusing to reverse because of language far more objectional than this used by coun-sel, this court, speaking through Justice CALHOUN, in the case of *Yazoo City* v. *Burcheet,* 42 So. 569, said, ''Jurors are not to be regarded as senseless objects,'' and then again speaking through Chief Justice WHITFIELD in the case of *Y. & M. V. R. R. Co.* v. *Rivers,* 46 So. 705, this court said:

The now very common assignment of error that the cause should be reversed because of remarks of counsel, has the usual lack of merit There is nothing whatever in the point. We have heretofore remarked, and we do not see why we should be called upon again and again to repeat it, that the twelve men who sit in the jury box are presumed to be men of common sense, honest, and desirous only of trying the case according to the law and the evidence, not according to the remarks of coun-sel, wise or foolish.''

We submit that there is no good ground for reversal in the above assignment of error.

In answer to objections of counsel to instruction No. 1, given in the court below for appellee, we show that this instruction in identical form has been recently passed upon by this court, in the case of *Natchez & S. R. Co.* v. *Crawford,* 55 So. 596, and speaking through Justice AN-DERSON, the court said, "It follows from these views that the court below committed no error in instructions given for appellee."

The instruction under objection being identical in form and applied to similar elements of damage to the one sustained by the court in the above opinion, we submit counsel for appellant should not raise so strong a hand against it at this time.

We submit that there might be some criticism as to the nicety of the language, but as to its substance there can be no criticism, because nothing can be found in it calculated to mislead a jury. We cite the case of *Georgia Pac. Ry. Co.* v. *West,* 6 So. 207, from which we quote the following from the opinion which is applicable to the circumstances of this case, to-wit:

"It may be admitted that some of the instructions for plaintiff are not expressed with verbal accuracy in all respects, and that some of the language of the court in modifying several instructions asked by the defendant is not felicitous; but the substantial meaning of the instruction is plain, and the jury could not have been misled by them, and in such case their verdict should not be disturbed, if there is sufficient evidence to sustain it."

REED, J., delivered the opinion of the court.

Appellee was engaged in loading logs on a flat car standing on a switch track of appellant company at Rienzi. There was a loading apparatus beside the car. A freight train backed in on the track where the flat car was standing for the purpose of coupling to a loaded car standing from fifteen to forty feet from the flat car. It struck the loaded car with some force, failed to make

the coupling, drove that car down the track, and struck the flat car, where appellee and those engaged in loading it were, with such force as to move it some distance, and to cause the falling of the apparatus, some of which struck appellee on his head, shoulder, and hip, inflicting the injuries complained of in his suit. The jury on the trial rendered a verdict in favor of appellee for two thousand dollars.

Appellant complains that the court erred in permitting certain witnesses to testify relative to appellee's expression of present pain and suffering, for the reason that the expressions took place after the bringing of the suit, and some of them evidently after there had been a trial of the case in which the jury failed to agree. We believe that the law touching the testimony of witnesses on this subject is well settled by the decision in the case of *Mississippi Central Railroad Company* v. *Turnage*, 95 Miss. 854, 49 South. 840, 24 L. R. A. (N. S.) 253, and that under that decision the trial court did not err in admitting the testimony objected to in this case. Judge MAYES, in delivering the opinion of the court in the Turnage case, said: "Declartions of present pain and suffering, no matter to whom made, are admissible as original evidence in all inquiries where pain and suffering constitute the question involved. . . . The admissibility of these declarations and expressions is not dependent upon whether or not they constitute a part of the *res gestae,* but rests upon a wholly different principle, and should not be confounded or confused with that principle of law. Nor does time play any part in determining whether or not they are admissible, so long as the declarations and exclamations are confined to existent pain and suffering. Whether this character of evidence be classed as exceptions to hearsay, or as independent and original evidence, its admissibility is beyond question." In the case of *Travelers' Insurance Co.* v. *Mosely,* 8 Wall. 397, 19 L. Ed. 437, the court said, in discussing the

admissibility of such evidence: "Such declarations are regarded as verbal acts, and are as competent as any other testimony, when relevant to the issue. Their truth or falsity is an inquiry for the jury." It was proper in this case for the testimony showing declarations and expressions of present pain and suffering by appellee to go to the jury, who, considering all the surrounding circumstances and the time, could give it its true weight.

Appellant assigns as error the admission of testimony showing the frame of mind of appellant's trainmen while doing the switching which occasioned the injury, for the reason that there is no connection between their rough conduct and expressions and the alleged injury. We note, however, the allegation in the declaration referring to the conduct of the train men as folows: "Each of said servants being in an angry and reckless state of mind." And the further allegation therein: "The said engine being handled in such gross and wilful manner as to show the highest degree of carelessness on their part, and the reckless disregard of the results which might follow from its dangerous consequence." As recklessness and carelessness are charged in this case, we think it was proper for the court to admit the testimony of such conduct and expressions to show the frame of mind of the men while doing this switching, so that the jury could judge whether the act resulted from such carelessness and recklessness.

We do not approve of the language used by appellee's attorney in the closing argument to the jury shown in the special bill of exceptions, but we do not believe that the trial court's failure to sustain the exception to such argument amounts to a reversible error.

We have carefully noted the objections made in the able and carefully prepared brief by counsel for appellant to certain instructions, but we cannot agree that the court erred in giving these instructions; nor do we think that the peremptory instruction asked by appellant

should have been given, for we find that there is clear conflict in the testimony, such as to require that the case be submitted to the jury; nor do we agree with the view of counsel for appellant that the appellee was a mere licensee.

We do not find any reversible error in the trial of this cause. It was properly submitted to the jury, and we will not disturb their verdict.

*Affirmed.*