# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-01745-SCT

*UNITED STATES FIDELITY & GUARANTY COMPANY*

*v.*

*THE ESTATE OF DORIS FRANCIS, BY AND THROUGH WILL FRANCIS, WILL FRANCIS, INDIVIDUALLY, JUDY DRAPER, INDIVIDUALLY AND EMILY DRAPER, BY AND THROUGH HER MOTHER AND ADULT NEXT FRIEND, JUDY DRAPER*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 9/15/1999 |
| TRIAL JUDGE: | HON. J. LARRY BUFFINGTON |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JANET G. ARNOLD |
| | CHARLES G. COPELAND |
| ATTORNEYS FOR APPELLEES: | DAVID SHOEMAKE |
| | EDDIE BOWEN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART AND REMANDED IN PART - 08/29/2002 |
| MOTION FOR REHEARING FILED: | 8/9/2001 |
| MANDATE ISSUED: | 9/19/2002 |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is granted. The original opinions are withdrawn, and these opinions are substituted therefor.

¶2. United States Fidelity & Guaranty Company (USF&G) seeks review of the Simpson County Chancery Court's ruling in the action involving Will Francis, Judy Francis Draper, Emily Draper and the Estate of

Doris Francis. In particular, USF&G seeks review of subject matter jurisdiction over this case, the amount of damages awarded and the prejudgment and post-judgment interest awards. Following a trial on the merits, the chancellor determined the court did have subject matter jurisdiction over the entire matter and awarded damages to the plaintiffs. Judy Draper and her daughter were also awarded prejudgment and post-judgment interest awards. USF&G appeals the ruling of the chancellor claiming three assignments of error which this Court will review.

**I. WHETHER THE CHANCERY COURT ERRED BY FAILING TO TRANSFER THE MATTER TO THE CIRCUIT COURT OF SIMPSON COUNTY.**

**II. WHETHER THE CHANCERY COURT'S AWARD OF DAMAGES TO WILL FRANCIS, JUDY FRANCIS DRAPER, EMILY DRAPER AND THE ESTATE OF DORIS FRANCIS WAS EXCESSIVE AND AGAINST THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE.**

**III. WHETHER THE CHANCERY COURT ERRED IN AWARDING POST-JUDGMENT INTEREST AND PREJUDGMENT INTEREST ON $50,000 OF JUDY FRANCIS DRAPER'S AWARD OF DAMAGES UNDER M.R.C.P. 59(e).**

¶3. Because of the applicable law, we determine that the chancery court inappropriately assumed jurisdiction of this cause; however, after a thorough review of the record as to USF&G's assignments of error on direct appeal, we find there is no reversible error which requires a remand of the case on direct appeal. Accordingly, because a final judgment was entered, this Court is precluded by Article 6, § 147 of the Mississippi Constitution from reversing the chancery court's finding without determining an error in addition to the lack of subject matter jurisdiction. We also find that there was no error in the award of damages or in the award of post-judgment interest. The chancellor erred in awarding prejudgment interest, and this award must be reversed and rendered. Consistent with Article 6, Section 147 of the Mississippi Constitution, because we hold that the assignments of error on cross-appeal have merit and that the chancery court did commit error which requires a remand, these issues are remanded to the Circuit Court of Simpson County on the issue of whether USF&G is liable based on the actions of its agent. We affirm the chancery court's judgment in all other respects.

## FACTS AND PROCEEDINGS BELOW

¶4. On July 2, 1997, Will Francis, Doris Francis, Judy Francis Draper and Emily Draper ("Francis/Draper") traveled north on U.S. Highway 49 toward Jackson from Mendenhall in a 1991 Buick Park Avenue which was owned by Will but operated by Judy. Judy Draper is the adult daughter of Will and Doris Francis; Emily Draper, Judy's daughter, is a minor. While stopped at a traffic light at the intersection of Linda Joe Drive and the highway in Richland, a vehicle operated by Lewis Henry Johnson collided into the rear of the Francis/Draper vehicle. All occupants of the Francis/Draper vehicle sustained personal injuries with Doris Francis ultimately dying as a result of those injuries.

¶5. At the time of the accident, Johnson maintained a liability insurance policy on his vehicle with State Farm Insurance Companies with limits of $25,000 per person and $50,000 per accident.[1] Will Francis maintained an automobile liability insurance policy issued by USF&G, numbered PPA10493088114, that provided $500,000 in liability coverage and $25,000 in uninsured motorist bodily injury (UMBI) coverage. The aforementioned Buick Park Avenue was listed on the policy as was a 1987 Nissan 720 short bed

pick-up truck, providing a stacked aggregate of $50,000 worth of UMBI coverage. Will Francis was a named insured under the policy while Judy and Emily Draper were insureds under the UMBI coverage by virtue of their occupancy of the vehicle that day.

¶6. In addition, Judy Draper also held an automobile liability insurance policy issued by USF&G, numbered PPA10991412309, that provided $300,000 in liability coverage and $300,000 in UMBI coverage. Two vehicles were listed on the declarations page of Judy Draper's policy: her 1991 Buick LaSabre vehicle and her son's 1996 Jeep Cherokee Sport, providing a stacked aggregate of $600,000 worth of UMBI coverage. Judy Draper was the named insured and her daughter, Emily, was, of course, a relative residing in the same household, therefore qualifying for UMBI coverage under her mother's policy. Will and Doris Francis were not qualified for coverage under this policy.

¶7. The settlement amount paid under Johnson's liability coverage limits with State Farm was less than the $50,000 stacked UMBI limits available to Will Francis and Judy and Emily Draper under the Francis policy and far less than the $600,000 stacked UMBI limits available to Judy and Emily Draper through Judy's policy. The USF&G policies provided underinsured UMBI benefits to the extent any of the insureds were legally entitled to recover damages from Johnson in excess of his liability limits.

¶8. USF&G determined that $25,000 in UMBI benefits were available from the Francis policy for the wrongful death claim of Doris Francis and the bodily injury claims of Will Francis, Judy and Emily Draper by taking the stacked UMBI limits of $50,000 and deducting a *Kuehling*[2] offset for the $25,000 paid by the Johnson liability policy. Unable to determine how to appropriately divide the $25,000, USF&G deposited this amount into the registry of the Simpson County Chancery Court and filed an action for interpleader.

¶9. On July 7, 1998, Will Francis, Judy Francis Draper, Emily Draper and the Estate of Doris Francis filed a separate action in the Simpson County Chancery Court against USF&G and Lewis Henry Johnson. The complaint was amended on July 13, 1998, to name the Estate of Lewis Henry Johnson as a defendant.[3]

¶10. In their negligence action, Francis/Draper alleged, inter alia, that USF&G negligently failed to explain to Will Francis that he had an option to obtain up to $500,000 in UMBI coverage for each of the two vehicles listed on his policy at the time he increased his liability coverage limits to $500,000. Francis/Draper alleged that as a result of the negligence of USF&G's agent in failing to explain this option, they should be entitled to have the UMBI limits increased to $500,000 for each vehicle, for a stacked aggregate of $1,000,000.

¶11. Along with their separate complaint, Francis/Draper filed a motion to consolidate their action with the previously filed interpleader action. Contemporaneously with its answer, USF&G filed a motion to transfer the Francis/Draper action to Simpson County Circuit Court, alleging lack of subject matter jurisdiction in chancery court. The Francis/Draper motion for consolidation of the actions and the USF&G motion to transfer were heard on February 8, 1999, and prior to ruling, the chancellor set a trial date for August 9, 1999. On July 29, 1999, the chancellor denied USF&G's motion to transfer to circuit court and granted the Francis/Draper motion to consolidate the action over strenuous objection from USF&G.

¶12. On August 3, 1999, USF&G filed a motion to stay the proceedings in chancery court and petitioned this Court for an interlocutory appeal to determine whether the chancery court had jurisdiction to hear the matter. USF&G's motion to stay proceedings was denied, and the case proceeded to trial where judgment

was entered in favor of Francis/Draper on September 15, 1999. Chancellor Buffington awarded damages to Will Francis in the amount of $100,000, to Judy Draper in the amount of $520,000, to Emily Draper in the amount of $35,000 and to the heirs at law of Doris Francis in the amount of $400,000. On October 18, 1999, this judgment was modified by a separate order that granted Judy Draper prejudgment interest on $50,000, post-judgment interest on $515,000, and granted Emily Draper post-judgment interest on $25,000. After the trial, this Court denied USF&G's petition for interlocutory appeal as moot. Immediately thereafter, this appeal ensued.

## STANDARD OF REVIEW

¶13. This Court applies a limited standard of review on appeals from chancery court. *Reddell v. Reddell*, 696 So.2d 287, 288 (Miss. 1997). Therefore, this Court should not interfere with the chancellor's findings of fact unless they were "manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Bell v. Parker*, 563 So.2d 594, 596-97 (Miss. 1990). "A 'finding of fact' is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Taylor,* 609 So. 2d 390, 393 (Miss. 1992)(citations omitted). However, the chancellor's interpretation and application of the law is reviewed under a de novo standard. *In re Carney*, 758 So.2d 1017, 1019 (Miss. 2000).

## DISCUSSION

### I. WHETHER THE CHANCERY COURT ERRED BY FAILING TO TRANSFER THE MATTER TO THE CIRCUIT COURT OF SIMPSON COUNTY.

¶14. USF&G asserts that its right to a trial by jury was abrogated when the chancellor refused to transfer the case to the circuit court. USF&G reminds this Court that Article 3, § 31 of the Mississippi Constitution of 1890 holds the right of a trial by jury inviolate. In further support of its claim, USF&G cites *Leaf River Forest Prods., Inc. v. Deakle*, 661 So.2d 188 (Miss. 1995), *McLean v. Green*, 352 So.2d 1312 (Miss. 1977), *Blackledge v. Scott*, 530 So.2d 1363 (Miss. 1988) and *Southern Leisure Homes, Inc. v. Hardin*, 742 So.2d 1088 (Miss. 1999) as authority regarding a chancellor's discretion involving the transfer or retention of cases based upon jurisdictional questions.

¶15. *Deakle* involved numerous "toxic tort" suits which found their way into chancery court through the ancient, but viable "bill of peace." A bill of peace is a procedural vehicle employed when a person has a right which may be controverted by various persons, at different times and by different actions. *Deakle*, 661 So. 2d at 192 (citing Black's Law Dictionary 151 (5th ed. 1979)). This Court held:

> Where the chancery court has exercised its equity jurisdiction, it may proceed to a complete adjudication of the suit and award all appropriate legal and equitable remedies. This complete adjudication extends to include the award of any punitive damages appropriate, although the chancery court has actual subject matter jurisdiction over such claims rather than merely pendant jurisdiction. Unless the case is one "historically tried by a jury," the chancery court may retain jurisdiction and make determinations typically made by a jury....Whether denominated a bill of peace or a motion for other equitable relief, if such request is a pleading filed subsequent to the initial complaint, as this one is, once the chancery court exercised its equity jurisdiction over any part of the dioxin litigation, it could have proceeded to a complete adjudication of all claims. However, the right to a jury trial must also be considered.

*Id.* at 193-94 (citations omitted). Because the chancery court had reached a final judgment on the merits of the case and because there was no error other than the lack of subject matter jurisdiction, this Court affirmed the judgment of the chancery court. *Id.* at 197.

¶16. In *McLean*, the legal guardian of a minor attempted to adjudicate a personal injury claim arising from a motorcycle accident in chancery court based on the chancery court's jurisdiction over minors. This Court determined that, although minors were involved, the case did not require any equitable relief. *McLean*, 352 So. 2d at 1314. This Court held when the action at bar arises from a tort claim, courts of equity should not assume jurisdiction over claims for personal injury. *Id.* One reason offered in support of the Court's holding is that, historically, tort claims have been tried by jury. *Id. McLean* further noted that:

> [W]here the chancellor erroneously assumed jurisdiction of a common law action, the right to trial by jury had been taken away. However, we also held that § 147 was just as much a part of our Constitution as § 31, and, therefore, they must be construed together. In doing this, the net result is that trial by jury shall remain inviolate except in cases where the chancellor's erroneous assumption of jurisdiction is the only error in the proceeding. Despite the mandate of § 147, we look with disfavor upon and consider it an abuse of discretion for a chancellor to assume jurisdiction of a common law action which properly should be tried in a court of law where the right to trial by jury remains inviolate. But absent other error, we cannot reverse.

*Id.* (citing *Talbot & Higgins Lumber. Co. v. McLeod Lumber Co.*, 147 Miss. 186, 113 So. 433 (1927)). The judgment of the chancery court was affirmed because no other reversible error was found. This Court has reversed the judgment of a lower court when error other than the lack of subject matter jurisdiction has been found.

¶17. In *Blackledge*, this Court reversed the Chancery Court of Claiborne County, holding the suit lay outside the subject matter jurisdiction of the chancery court. This Court determined the suit was filed in chancery court in an attempt to vest that court with jurisdiction over a purely legal claim. *Blackledge*, 530 So. 2d at 1365-66. *Blackledge* involved a rear-end collision accident similar to the case at bar. The plaintiffs alleged that the chancery court jurisdiction was proper because the matter would be "too complicated for a jury" and discovery expense in circuit court would be exorbitant. *Id.* at 1365. The chancellor agreed with the plaintiffs' argument and accepted jurisdiction over the entire matter.

¶18. Recognizing that § 147 of the Mississippi Constitution forbids reversal upon jurisdictional grounds alone, this Court found the suit against the three insurance companies involved amounted to a fraudulent joinder as to venue and reversed on that basis because errors in venue are not within the bar of § 147. *Id.* at 1365-66. The facts of this case and the facts of the case sub judice can be distinguished. In the case sub judice, no other error subject to remand is found as to USF&G's assignments of error except for the lack of subject matter jurisdiction. In *Blackledge*, venue was not proper; and therefore, this Court could reverse the final judgment of the chancery court without being restricted by § 147.

¶19. In *Southern Homes*, this Court held that matters historically tried by a jury, such as a breach of contract claim, are best heard in circuit court. *Southern Homes*, 742 So. 2d at 1090. This Court also held if any doubts were to arise as to the jurisdiction of the chancery court, those doubts should be decided in favor of transfer to circuit court for a trial by jury. *Id.* Southern followed the correct procedure by filing an interlocutory appeal with this Court before a final judgment was issued on the merits of the case because the

Mississippi Constitution prohibits reversal on a jurisdictional issue following a trial on the merits. *Id.* at 1091. Article 6, § 147 of the Mississippi Constitution provides that:

> No judgment or decree in any chancery or circuit court rendered in a civil cause shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any error or mistake as to whether the cause in which it was rendered was of equity or common-law jurisdiction; but if the Supreme Court shall find error in the proceedings other than as to jurisdiction, and it shall be necessary to remand the case, the Supreme Court may remand it to that court which, in its opinion, can best determine the controversy.

Therefore, this Court was able to grant the interlocutory appeal ordering that the case be transferred to the circuit court. *Id.*

¶20. As *Southern Homes* indicates, it is appropriate to seek permission to bring an interlocutory appeal to address the issue of subject matter jurisdiction in order to prevent a final resolution of the case in an inappropriate forum. In the case sub judice, USF&G filed a petition for interlocutory appeal on August 3, 1999, six days before the scheduled trial. USF&G also filed a motion to stay the proceedings which was denied, and the trial proceeded on August 9, 1999. The petition for interlocutory appeal was not considered by this Court until after a final judgment had been decided on the merits of the case; therefore, it was denied as moot. This Court has continuously recognized the inviolate right of its citizens to a trial by jury pursuant to Article 3, Section 31, of the Mississippi Constitution. But this Court, as previously stated, has also recognized the restraints imposed by Section 147 of the Constitution once a final judgment has been rendered. Since a final judgment has been rendered in this matter and there is no evidence of another error other than subject matter jurisdiction, as relates to USF&G's assignments of error, it would be against the weight of established judicial precedent and Article 6, § 147 of our State's Constitution to reverse the case on this basis.

¶21. Francis/Draper incorrectly rely on *Cossitt v. Nationwide Mut. Ins. Co.,* 551 So. 2d 879 (Miss. 1989) in their argument that USF&G chose the forum in which to proceed by filing their interpleader action in the Simpson County Chancery Court. The facts in *Cossitt* are clearly distinguishable from the facts in the case sub judice. In *Cossitt*, Nationwide interpled uninsured motorist coverage of $25,000 into the Hinds County Chancery Court. *Id.* at 880. Cossitt then counterclaimed for $75,000 and for punitive damages. *Id.* Thus, equity issues and issues of law were all contained within a single action before the chancellor. This is not so in the case sub judice. USF&G, like Nationwide, interpled $25,000 into the Simpson County Chancery Court. But Francis/Draper did not answer with a counterclaim. Francis/Draper filed a separate action in the Simpson County Chancery Court against USF&G and the Estate of Lewis Henry Johnson. The Francis/Draper complaint did not contain any equity issues. The complaint alleged a negligent motor vehicle accident, sought damages for personal injury and wrongful death, sought benefits from the insurance policy and alleged negligence on the part of the insurance company's agent. Although there was an interpleader action before the chancery court, that alone does not establish subject matter jurisdiction of the separate tort action. *Cossitt* is distinguishable and thus not applicable to the case at bar.

¶22. Francis/Draper also incorrectly argue the chancery court obtained subject matter jurisdiction by consolidating the two separate claims. This Court has established the rule that consolidation is in the sound discretion of the trial court and should be liberally construed. *See Stoner v. Colvin*, 236 Miss. 736, 110 So.2d 920 (1959); *Gwin v. Fountain*, 159 Miss. 619, 126 So. 18 (1930); *Planters Oil Mill v. Yazoo*

*& M.V.R. Co.*, 153 Miss. 712, 121 So. 138 (1929). But "[i]t is important to keep in mind that consolidated actions never lose their identity as separate actions." *Smith v. H.C. Bailey Cos.,* 477 So. 2d 224, 231 (Miss. 1985). "Consolidation in no way dispenses with the need for separate pleadings or, most importantly, separate final judgments." *Id. See Elliott v. Harrigill*, 241 Miss. 877, 882, 133 So.2d 612 (1961); *Stoner v. Colvin*, 236 Miss. 736, 110 So.2d 920 (1959); V. Griffith, Mississippi Chancery Practice § 506 (2d ed. 1950).

¶23. The chancellor, in the case sub judice, consolidated the two separate actions of USF&G and Francis/Draper over the strenuous objections of USF&G. USF&G continued to maintain throughout the action that the chancery court did not have subject matter jurisdiction over this lawsuit. We agree with USF&G, but we also understand that once a chancery court makes a final judgment on the merits of the case, this Court may not reverse that finding without finding an error in addition to lack of subject matter jurisdiction. Again as to USF&G's assignments of error on direct appeal, we are unable to find such error subject to remand and conclude that because a final judgment was rendered, this Court, in accordance with § 147 of the Mississippi Constitution, may not overturn the finding of the chancellor for want of subject matter jurisdiction alone.

### II. WHETHER THE CHANCERY COURT'S AWARD OF DAMAGES TO WILL FRANCIS, JUDY FRANCIS DRAPER, EMILY DRAPER AND THE ESTATE OF DORIS FRANCIS WAS EXCESSIVE AND AGAINST THE OVERWHELMING WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

¶24. USF&G contends that the damages awarded to Francis/Draper at trial were excessive and against the overwhelming weight of the evidence. Where the chancellor is the trier of facts, his findings of fact cannot be disturbed by this Court on appeal unless it is determined with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence. *Richardson v. Riley,* 355 So. 2d 667, 668 (Miss. 1978). With regard to the reasonableness of damages, this Court has specifically said:

> Each suit for personal injury must be decided by the facts shown in that particular case. The amount of physical injury, mental and physical pain, present and future, temporary and permanent disability, medical expenses, loss of wages and wage-earning capacity, sex, age and health of the injured plaintiff, are all variables to be considered by the jury in determining the amount of damages to be awarded.

*Kinnard v. Martin,* 223 So. 2d 300, 303 (Miss. 1969)(citing *Mobile & Ohio R.R. v. Carpenter*, 104 Miss. 706, 61 So. 693 (1913); *Southern R.R. v. Kendrick*, 40 Miss. 374 (1866); 22 Am. Jur. 2d *Damages* § 85 (1965)). Further, as to excessive verdicts, this Court has noted:

> The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess.

*Biloxi Elec. Co. v. Thorn,* 264 So. 2d 404, 405 (Miss. 1972)(citing 22 Am. Jur. 2d *Damages* § 366, at 473 (1965)).

### A. The Award to Judy Francis Draper

¶25. The trial court found that Judy Draper had medical bills and expenses totaling approximately $25,000. The trial court further found that Judy Draper experienced pain and suffering, will continue to experience pain and suffering in the future and awarded her $520,000 in damages.

¶26. Draper testified that she suffered from severe bruising on her thighs, hips, left shoulder and back, as well as knots and muscle spasms in her back. She was afflicted with intense headaches that lasted up to three days along with pain radiating in her neck and back. Draper testified that the repercussions of these injuries affected her daily enjoyment of life as she can no longer walk for long periods of time, nor can she stand, stoop, kneel, bend, raise her arms without some amount of pain. She testified that this limitation on her movement interferes with her job as a teacher. Draper also developed a fear of driving and sustained a strained relationship with her daughter, Emily, for a short time after the accident due to Emily's belief that Judy was responsible for Doris's death.

### B. The Award to Emily Draper

¶27. Emily Draper was six years old at the time of the accident. She was riding in the back seat with her grandmother, Doris Francis. Upon impact, her grandmother fell over on top of her, and due to the damage to the vehicles, Doris remained slumped over on top of Emily for approximately thirty minutes. The trial court found that "although not badly injured in this wreck, [Emily] had trouble coping with the fact that her grandmother was killed next to her and, in fact, was laying over her..." and awarded Emily $35,000 in damages. The trial court found that Emily had actual medical bills totaling approximately $1,100.

### C. The Award to Will Francis

¶28. The chancellor found that Will Francis had medical expenses totaling approximately $8,000 and has medical problems that will continue to bother him. He awarded Will Francis $100,000 in damages.

¶29. Will Francis's testimony at trial was that he had a nauseated feeling and pain after the accident. He testified his legs were still bothering him and giving him problems two years after the accident, stinging and burning the entire time he is awake. He also testified that he has trouble standing for any length of time and walking beyond short distances.

### D. The Award to the Legal Heirs of Doris Francis

¶30. The trial court found that Doris Francis had medical bills totaling approximately $30,000 prior to her death. Holding that although there were "discrepancies" as to the amount of suffering she experienced during her hospitalization, the chancellor found that she did in fact experience pain and suffering to some extent and awarded her heirs at law $400,000.

¶31. USF&G argues that the amount given to the heirs of Doris Francis was clearly against the overwhelming weight of the evidence. USF&G points out that the plaintiff bears the burden to prove, by substantial evidence, that a decedent who is the subject of a wrongful death action survived and was conscious after the accident which resulted in the decedent's demise in order to recover damages for pain and suffering. *M & M Pipe & Pressure Vessel Fabricators, Inc. v. Roberts*, 531 So. 2d 615, 621 (Miss. 1988). USF&G specifically believes that the chancellor 's finding that he was "satisfied that [Doris Francis] at least on the day of the accident had sufficient brain functions to have suffered from injuries that

[led] to her death" was clearly against the direct medical testimony presented at trial.

¶32. Dr. Philip Azordegan testified that Doris Francis was deeply comatose after the accident and exhibited little brainstem function until her death on July 8, 1997, seven days later. Dr. Azordegan also noted that those who are deeply comatose are not aware of nor conscious of pain.

¶33. Francis/Draper respond that direct testimony was presented at trial that proved Doris Francis did respond to stimuli and, therefore, consciously suffered from her injuries. Judy Draper testified that at the accident scene, while trying to extract her mother from the vehicle, she heard Doris moan. Janice Brien, a family friend, testified that while she was talking to Doris during a hospital visit, Doris wiggled her foot, shrugged her right shoulder, opened her eyes for a moment and shed a tear. Melissa Ann Francis, Doris' other daughter, testified that while she talked to her mother during a hospital visit, Doris wrinkled her eye brows, moaned as if she wanted to talk and shed tears. Testimony was presented that she had a respirator tube in her mouth that inhibited her ability to speak. Francis/Draper note that Dr. Azordegan admitted there was no definite way of knowing whether or not she suffered any pain.

### E. Analysis of the Awards

¶34. USF&G withdrew its post-trial motion for a new trial or in the alternative, to alter or amend the judgment pursuant to [M.R.C.P. 52(b)](#) which states in part:

> When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised regardless of whether the party raising the question has made in court an objection to such findings or has filed a motion to amend them or a motion for judgment or a motion for a new trial.

Therefore, Mississippi's basic rule of law that a trial court will not be reversed for failing to grant relief that was not requested does not apply in this particular case. *See Chase v. State*, 645 So. 2d 829, 846 (Miss. 1994); *Jones v. State*, 606 So.2d 1051, 1058 (Miss. 1992); *Crenshaw v. State*, 520 So.2d 131, 134-35 (Miss. 1988)).

¶35. Even if this Court disagrees with the lower court on the findings of fact and might have arrived at a different conclusion, this Court is still bound by the chancellor's findings unless it is determined these findings are manifestly wrong. *Richardson*, 355 So. 2d at 668. After reviewing the facts presented in this case concerning the amount of physical injury, mental and physical pain, present and future, temporary and permanent disability and other variables that must be considered, we cannot say that the amount of damages awarded by the chancellor to Judy Francis Draper, Emily Draper, Will Francis and the legal heirs of Doris Francis are so excessive that they are unreasonable, outrageous or exhibit passion, partiality, prejudice or corruption.

### III. WHETHER THE CHANCERY COURT ERRED IN AWARDING POST-JUDGMENT INTEREST AND PREJUDGMENT INTEREST ON $50,000 OF JUDY FRANCIS DRAPER'S AWARD OF DAMAGES UNDER M.R.C.P. 59(e).

¶36. USF&G argues as its final assignment of error that the trial court erred by granting Francis/Draper prejudgment and post-judgment interest. This Court has commented on the award of prejudgment interest, saying:

Mississippi recognizes judicial authority to award prejudgment interest to a prevailing party in a breach of contract suit. Prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made or when the denial of a claim is frivolous or in bad faith. No award of prejudgment interest is allowed where the principal amount has not been fixed prior to judgment. Prejudgment interest is not imposed as a penalty for wrong doing; it is allowed as compensation for the detention of money overdue. For prejudgment interest to be awarded, the party must make a proper demand for the interest in the pleadings, including the date that it was allegedly due. [T]o be entitled to prejudgment interest, they must meet several requirements. First, the claim for damages must be liquidated or the denial of the claim...must have been frivolous or in bad faith. Second, the pleadings must reflect...a request for prejudgment interest.

*Preferred Risk Mut. Ins. Co. v. Johnson*, 730 So. 2d 574, 577 (Miss. 1998)(citations omitted). USF&G argues that Francis/Draper failed to meet the necessary requirements listed above to qualify for prejudgment interest. We agree with USF&G.

¶37. The damages suffered by Francis/Draper were in dispute and unliquidated. Had they been liquidated, there would have been no need for a finding from the trial court on that matter. Bad faith on USF&G's part was never alleged nor proven. It was error for the trial court to award prejudgment interest. Because we reverse the award of prejudgment interest based upon Francis/Draper's failure to meet the required standard of proof outlined in *Johnson*, we need not address USF&G's M.R.C.P. 59 argument.

¶38. We also hold the chancellor was within the bounds of his discretionary authority in awarding post-judgment interest. Because the right to post-judgment interest is a statutory right according to Miss. Code Ann. § 75-17-7 (1991), this Court does not conclude that the motion for interest was a motion to amend or alter the judgment. Therefore, we need not address the timeliness of filing the motion in accordance with M.R.C.P. 59. Miss. Code Ann. § 75-17-7 (1991) has been amended to allow interest "at a per annum rate set by the judge." We hold that the chancellor's awarding of interest at the rate of one percent above the prime rate of eight percent was within his discretion under the revised statute.

<u>THE FRANCIS/DRAPER CROSS-APPEAL</u>

**I. WHETHER THE CHANCERY COURT ERRED BY NOT HOLDING USF&G LIABLE FOR THE ACTIONS OF ITS AGENT, THE INDEPENDENT INSURANCE AGENCY, DESPITE THE COURT'S RECOGNITION THAT A PRINCIPAL CAN BE BOUND BY THE ACTIONS OF ITS AGENT.**

**II. WHETHER THE CHANCERY COURT ERRED BY NOT HOLDING USF&G LIABLE FOR THE DAMAGES UNDER WILL FRANCIS'S INSURANCE POLICY.**

¶39. Francis/Draper argue on cross-appeal that the trial court erred by failing to hold USF&G, the alleged principal, responsible for the actions of Ronnie Teater, an insurance agent with the Independent Insurance Agency who sells USF&G policies. Francis/Draper argue that when Teater informed Will Francis of his option to raise his vehicle liability coverage from $25,000 to $500,000 in the early 1980s, Teater negligently failed to explain to Francis that he could also raise his UMBI coverage to $500,000 as well. When questioned at trial about any specific recollections of that meeting with Francis, Teater responded that he could not recall the meeting. Teater did testify that, although he did not remember the specifics of that particular meeting, it was his custom and practice to discuss the option of raising the uninsured motorist

coverage to the limit of the liability coverage when someone increases their vehicle liability coverage.

¶40. Will Francis testified, however, that he remembered the meeting more clearly than Teater. He testified he thought the government had set a limit on how much uninsured motorist coverage an individual could have. He further testified that he never questioned Teater about coverage limits that year, nor any of the following sixteen years that Teater handled his insurance needs. After the accident, Francis raised his UMBI policy limits to $300,000. Explaining his newfound understanding of the limits, Francis stated that he "asked around" about it and discovered that he could increase the limits because he thought "they changed the law." Francis, a former part owner of the Independent Insurance Agency, denied outright that Teater told him he could buy more than $25,000 worth of uninsured motorist coverage.

¶41. In *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56, 76 (Miss. 1996), this Court held that an insurance agent has a duty to explain uninsured motorist coverage to an insured and that a violation of that duty can support a finding that the agent was negligent. We did not hold, however, that this finding constituted negligence per se. Thus, USF&G argues that Francis/Draper must prove the remaining elements of a negligence action, including causation. USF&G argues that Francis/Draper failed to prove that Teater's alleged failure to discuss the coverage options with Will Francis was the proximate cause of Will Francis not raising his UMBI limits.

¶42. The trial court held:

> This Court had previously denied USF&G's motion to bring Ronnie Teater and Independent Insurance Agency in as a necessary party.... [I]n view of the fact that Mr. Teater was in fact not made a party and of course Independent Insurance Agency having not been made a party, this Court feels that and finds that to hold USF&G responsible for any amount of liability over the $25,000/$50,000 per vehicle in uninsured coverage would not be correct.... This Court further recognizes that the principal can be bound by their agent however since this Court did not allow the motion to bring in those parties this Court is not going to hold the principal responsible for the actions of its agent.

The chancellor also held that a prima facie case had been made by Francis/Draper as to Teater's failure to inform Francis about his right to purchase more UMBI coverage.

¶43. Francis/Draper believe that the chancellor erred by failing to assess the principal (USF&G) with the responsibility of its agent. Under the principles of agency, an insurer is bound by the acts of its agents. *McCann v. Gulf Nat'l Life Ins. Co.*, 574 So.2d 654, 656 (Miss. 1990). *See Andrew Jackson Life Ins. Co. v. Williams*, 566 So.2d 1172, 1180 (Miss. 1990); *Southern United Life Ins. Co. v. Caves*, 481 So.2d 764, 766 (Miss. 1985); *American Cas. Co. v. Whitehead*, 206 So.2d 838, 842 (Miss. 1968). Miss. Code Ann. § 83-17-1 (1999)[(4)], which defines an agent, was enacted "to prevent insurers from operating through third persons and later denying responsibility for the acts of those persons." *McCann*, 574 So.2d at 656 (citing *Ford v. Lamar Life Ins. Co.*, 513 So.2d 880, 888 (Miss. 1987)).

¶44. In essence, Francis/Draper ask this Court to reverse the chancellor's decision to deny their claim to $1,000,000 stacked aggregate UMBI coverage because he found a prima facie case against Teater existed. Although the trial court found a prima facie case to exist, the chancellor suggested the agent must be made a party to litigation in order to afford the principal an opportunity to submit a complete defense. We do not agree with the trial court's assessment that Teater was a necessary party under these facts. Teater testified as to his recollection of what occurred and was subjected to a rigorous cross-examination.

Making Teater a party to the litigation would not afford USF&G any greater opportunity to defend itself. Finding that the chancellor erred in failing to rule on the Francis/Draper claim that USF&G was liable based on the actions of Ronnie Teater, we remand the issues raised on Francis/Draper's cross-appeal to the Circuit Court of Simpson County, pursuant to Article 6, Section 147 of the Mississippi Constitution.

## CONCLUSION

¶45. We hold that, although the chancery court inappropriately assumed jurisdiction of this cause, a final judgment was entered and this Court may not reverse the chancery court's finding without determining an error in addition to lack of subject matter jurisdiction. The only reversible error on USF&G's direct appeal is the chancellor's award of prejudgment interest; however, since we have reversed and rendered on that issue, as opposed to a remand, we need not reverse for want of jurisdiction under § 147 of the Constitution. We also hold the damages awarded to Francis/Draper were within the discretion afforded the chancellor, and that while the prejudgment interest overstepped the bounds of established judicial precedent and must be reversed, the post-judgment interest award did not, and is therefore affirmed. Additionally, the cross-appeal filed by Francis/Draper is well taken. Pursuant to Article 6, § 147 of the Mississippi Constitution, as to the cross-appeal of Francis/Draper, we remand this cause to the Circuit Court of Simpson County for further proceedings consistent with this opinion on the issue of the alleged liability of USF&G based on Teater's actions. The chancery court's judgment is affirmed in all other respects.

¶46. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART AND REMANDED IN PART.**

> **PITTMAN, C.J., SMITH, P.J., WALLER AND COBB, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J., AND GRAVES, J.**

> **DIAZ, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶47. I concur in the result reached by the majority. However, I write separately to note my disagreement with the majority's finding that Francis/Draper incorrectly rely on *Cossitt v. Nationwide Mut. Ins. Co.,* 551 So.2d 879 (Miss.1989). The majority finds that *Cossitt* is not applicable to the case sub judice. In *Cossitt*, once Nationwide interpled its uninsured motorist coverage in Hinds County Chancery Court, subject matter jurisdiction attached and the chancery court was fully empowered to wholly grant relief. *Tideway Oil Programs, Inc. v. Serio,* 431 So.2d 454, 464 (Miss.1983).

¶48. The same scenario that occurred in *Cossitt* has occurred in the case sub judice. USF&G chose the forum in which to proceed by filing an interpleader action in the Simpson County Chancery Court. Subject matter jurisdiction subsequently attached for claims arising out of the same subject matter. In *Cossitt*, the majority reasons that because Cossitt counterclaimed for punitive damages, all issues of law and equity were contained within a single action before the chancellor. The majority reasons that the case sub judice is distinguishable since Francis/Draper filed a separate action, as opposed to a counterclaim. However, whether Francis/Draper filed a counterclaim or a separate action, the subject matter remained the same and jurisdiction appropriately remained with the chancery court. Cossitt's claim arose out of the same subject matter, just as the Francis/Draper claim arose out of the same subject matter. When new claims arise, the issue of whether to retain jurisdiction is based on whether the subject matter remains the same. This is the

law according to *Serio* and *Cossitt*.

¶49. Despite USF&G's efforts to transfer the case to circuit court, USF&G chose to invoke the jurisdiction of the chancery court by initiating the original interpleader action there. It should be noted that USF & G never requested a jury trial. Had it desired one, the chancery court could have accommodated its request for a jury. *Branaman v. Long Beach Water Management Dist.,* 730 So.2d 1146, 1151 (Miss.1999). In accordance with Article 6, § 147 of the Mississippi Constitution, the majority reaches the same outcome in allowing the judgment to stand, despite its finding that the chancery court otherwise lacked jurisdiction. Based on the understanding that the subject matter remained the same, I would hold that the chancery court acted appropriately in retaining jurisdiction.

### McRAE, P.J., AND GRAVES, J., JOIN THIS OPINION.

1. Johnson's classification as an underinsured motorist is uncontested.

2. *See* ***State Farm Mut. Auto. Ins. Co. v. Kuehling***, 475 So. 2d 1159, 1163 (Miss. 1985) (holding that under an underinsured motorist coverage policy which specifically provides for an offset, insurer was entitled to offset the total of its uninsured motorist coverage by the settlement awarded to its insured from tortfeasor's insurance company).

3. The Estate of Lewis Henry Johnson settled with Francis/Draper and was dismissed with prejudice in July 1999.

4. Miss. Code Ann. § 83-17-1 defines an agent as:

> Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect, or transmit any premium of insurance, ... whether any of such acts shall be done at the instance or request or by the employment of the insurance company, or of or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract....