# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-00505-SCT

*KANSAS CITY SOUTHERN RAILWAY COMPANY, INC.*

*v.*

*J. C. JOHNSON AND KERRY LYNN JOHNSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/18/1998 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STUART G. KRUGER |
| ATTORNEYS FOR APPELLEES: | PAT M. BARRETT |
| | ISAAC K. BYRD, JR. |
| | PRECIOUS TYRONE MARTIN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED-02/08/2001 |
| MOTION FOR REHEARING FILED: | 3/2/2001; denied 5/10/2001 |
| MANDATE ISSUED: | 10/5/2001 |

**BEFORE PITTMAN, C.J., SMITH AND DIAZ, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. On the Court's own motion, the prior opinions issued in this case are withdrawn, and this opinion is substituted therefor.

¶2. Kansas City Southern Railway appeals to this Court from a jury verdict rendered in Hinds County Circuit Court in favor of J.C. Johnson in the amount of $2.5 million and $1 million for Kerry Lynn Johnson. Judgment was entered based on the verdict. KCS subsequently moved for a judgment notwithstanding the verdict or a new trial. The circuit court denied this motion but ordered a remittitur of $500,000 on the damage award to Kerry Lynn Johnson. The remittitur was accepted. KCS promptly perfected this appeal.

¶3. This Court holds that the jury was properly instructed regarding damages for loss of enjoyment of life recoverable as a separate form of damages. We further hold that the trial court properly allowed the testimony of plaintiff's expert witness, Dr. Stan Smith. We therefore affirm the trial court.

## STATEMENT OF THE FACTS

¶4. Viewed in the light most favorable to the Johnsons, the facts are as follows. On July 18, 1995, the vehicle driven by J.C. Johnson ("Johnson") was struck by KCS's eastbound 40-mile-per-hour freight train operated by its engineer, Cook. Before turning off to his right from U.S. Highway 80 some 68 feet north of the railroad crossing, Johnson had been traveling east on Highway 80, heading parallel with and in the same direction as the train, which, unknown to Johnson, was overtaking him from behind.

¶5. As Johnson headed up the steep, rough roadway slope of Johnson Quarters Road to the humpbacked

summit of the crossing, unable to see oncoming vehicles on the other side of the tracks because of the severe grade, his view both up and down the tracks was seriously impaired by trees, bushes and other vegetation growing on KCS's right-of-way, which extended out 50 feet on either side of the track. There were no flashing lights or gates, or any other form of active protection, to warn motorists that a train was approaching this crossing at about 60 feet per second.

¶6. KCS's conductor seated on the left side of the locomotive cab testified that he saw Johnson as he turned off Highway 80 onto Johnson Quarters Road, when the train was about 300 feet away from impact. The engineer on the right side of the cab never saw Johnson's truck until somewhere between 100 to 150 feet. There was evidence that the train's horn was blown before the collision, but it was alleged that KCS's engineer had failed to blow his horn at a sufficient distance away from the crossing to give Johnson adequate warning that the 40-mph(60-feet-per-second) train was coming.

¶7. It is also alleged that KCS had not maintained the crossing nor adopted any reasonable policy relative to vegetation control to provide a clear sight distance to the motoring public to detect approaching high speed trains. As a result of the railroad's negligence, in both crossing maintenance and train operation, Johnson contends he sustained severe and permanent injuries, consisting of a closed-head injury which has left him little more than a child. Johnson had a long history of employment and alleges he has suffered significant economic loss and medical expenses. Additionally, his wife suffered substantial loss of consortium.

¶8. After hearing the evidence, the jury found in favor of the Johnsons. KCS appeals to this Court and presented a number of issues for discussion.

## STATEMENT OF THE ISSUES

**I. WHETHER THE CIRCUIT COURT ERRED IN REFUSING TO TRANSFER VENUE TO THE CIRCUIT COURT OF RANKIN COUNTY.**

**II. WHETHER THE CIRCUIT COURT ERRED IN DENYING KCS'S MOTIONS FOR A DIRECTED VERDICT, PEREMPTORY INSTRUCTION, JUDGMENT NOTWITHSTANDING THE VERDICT, AND NEW TRIAL.**

**III. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN ALLOWING EXPERT TESTIMONY REGARDING HEDONIC DAMAGES.**

**IV. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING RECOVERY OF HEDONIC DAMAGES.**

**V. WHETHER THE CIRCUIT COURT ERRED IN GRANTING NUMEROUS JURY INSTRUCTIONS.**

## DISCUSSION OF LAW

**I. WHETHER THE CIRCUIT COURT ABUSED ITS DISCRETION IN REFUSING TO TRANSFER VENUE.**

¶9. The Johnsons filed the present action against KCS, Illinois Central, and Cook in the Circuit Court of

Hinds County. The circuit court denied the defendants' motion to transfer venue to Rankin County. On appeal, KCS argues that the circuit court erred in denying the motion.

¶10. "An application for a change of venue is addressed to the discretion of the trial judge, and his ruling thereon will not be disturbed on appeal unless it clearly appears that there has been an abuse of discretion or that the discretion has not been justly and properly exercised under the circumstances of the case." *Beech v. Leaf River Forest Prods., Inc.*, 691 So. 2d 446, 448 (Miss. 1997) (quoting *Mississippi State Highway Comm'n v. Rogers*, 240 Miss. 529, 539-40, 128 So. 2d 353, 358 (1961)). "The trial court must give the plaintiff the benefit of reasonable doubt with respect to the venue selection, and this Court must do the same on appeal." *Pisharodi v. Golden Triangle Reg'l Med. Ctr.*, 735 So. 2d 353, 354 (Miss. 1999) (citing *Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149, 1156 (Miss.1992)).

¶11. The railroad venue statute, Miss. Code Ann. § 11-11-5 (Supp. 2000), provides as follows:

> Actions against any railroad . . . may be brought in the county where the cause of action accrued, in the county where the defendant has its principal place of business, or in the county in which the plaintiff resided at the time the cause of action accrued.

The cause of action in this case accrued in Rankin County, and the Johnsons resided in Rankin County. KCS argues that because its principal place of business is in Kansas City, Missouri, and not in Hinds County, the circuit court improperly denied its request to transfer venue to Rankin County. The Johnsons assert that KCS's principal place of business is in Hinds County, its registered agent for service of process, as well as Illinois Central's principal place of business and its registered agent for service of process. KCS, however, denies this despite the fact that one of its employees testified that the main office of the railroad was located in Jackson.

¶12. In *Sawyer v. Illinois Cent. Gulf R.R.*, 606 So. 2d 1069 (Miss. 1992), this Court held that for purposes of the railroad venue statute, the principal place of business of Illinois Central was in Hinds County. In *Salts v. Gulf Nat'l Life Ins. Co.*, 743 So. 2d 371, 374 (Miss. 1999), this Court explained:

> In suits involving multiple defendants, where venue is good as to one defendant, it is good as to all defendants. This is true where the defendant upon whom venue is based is subsequently dismissed from the suit. In such situations, venue as to the remaining defendants continues despite the fact that venue would have been improper, if the original action had named them only.

KCS argues that this rule does not apply in the case at hand because the Johnsons' claim against Illinois Central was filed frivolously to establish venue in Hinds County. KCS's argument is not well-taken. After careful review, we find that venue was proper. The trial court had before it evidence that KCS's principal place of business was in Hinds County. We cannot say the trial court abused its discretion in denying the motion to transfer venue. Accordingly, this issue is without merit.

### II. WHETHER THE CIRCUIT COURT ERRED IN DENYING KCS'S MOTIONS FOR A DIRECTED VERDICT, PEREMPTORY INSTRUCTION, JUDGMENT NOTWITHSTANDING THE VERDICT, AND NEW TRIAL.

¶13. This Court's standards of review for a denial of a judgment notwithstanding the verdict, a directed verdict, and a peremptory instruction are identical:

Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Steele v. Inn of Vicksburg, Inc.,* 697 So. 2d 373, 376 (Miss. 1997). The trial judge properly denied the above motions, and the arguments that we should find otherwise are not persuasive. Evidence as to the hazardous conditions of the crossing as well as the adequacy of the sight distance were clearly questions for the jury.

¶14. KCS also claims that it would be proper to grant a new trial in light of the evidence in their favor and due to preemption of federal law. We disagree. This Court will reverse a trial court's denial of a request for new trial only when the denial amounts to a abuse of that court's discretion. *Id.* at 376 (citing *Shields v. Easterling*, 676 So. 2d 293, 298 (Miss. 1996); *Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n*, 560 So. 2d 129, 132 (Miss. 1989)). The same arguments used in the paragraph above can be made here as to the weight of the evidence, but whether we should be preempted by federal law should be addressed.

¶15. KCS consistently refers to an advanced warning sign for which federal funds were spent. A careful examination of the record reveals nothing but the reflective, cross-buck. While it is unclear as to which sign KCS is referring, it makes no difference. If it is a sign other than the cross-buck there is no evidence of its existence. If KCS is referring to the reflective cross-buck, there is lack of proof that federal funds were spent on its installation.

¶16. KCS also claims that *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S. Ct. 1732, 123 L. Ed.2d 387 (1993); *Hester v. CSX Transp*., 61 F.3d 382, 5th Cir. (1995); and *Pearson v. Columbus & Greenville Ry.*, 737 So. 2d 390 (Miss. Ct. App. 1998), demonstrate that our laws are preempted by federal guidelines in this case. Again, we disagree. Before federal law will preempt a state law there must be proof that federal-aid funds were used in the installation of devices including automatic gates with flashing light signals when one or more of several conditions exist. *See* 23 CFR § 646.214(b)(2000).

¶17. *Pearson* stands for the proposition that there must be more than the existence of a plan in that the plan must also have been implemented. *Pearson,* 737 So. 2d at 396. The court further stressed that mere expenditure of federal funds from whatever source or for whatever reason, does not trigger preemption. *Id.* KCS would like us to rely on the memory of one retired MDOT employee who claims to remember federal funds being spent at this particular crossing. We will not rule that federal funds have been spent where no documentation was produced in support thereof. There is no federal preemption in this case, and the matter is properly before this Court.

¶18. KCS also claims that Miss. Code Ann. §§ 63-3-303, 305 removes any and all responsibility from its shoulders and transfers the duty to the Mississippi Department of Transportation. Section 63-3-303 provides, in pertinent part:

The commissioner of public safety and the state highway commission shall place and maintain such traffic-control devices conforming to its manual and specifications, upon all state and county highways

as it shall deem necessary to indicate and to carry out the provisions of this chapter or to regulate, warn, or guide traffic.

¶19. Section 63-3-305 states:

Local authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or provisions of local traffic ordinances or to regulate, warn, or guide traffic.

Nevertheless, §§77-9-247 and 248 (discussing installation of cross-bucks), §77-9-251 (discussing duty of railroad in maintaining the grade), §77-9-245 (duty to enclose depots), and §77-9-253 (duty to maintain stock gaps and cattle guards) clearly refer to duties of the railroad in the interest of public safety. This refutes the point that KCS has no duty toward the public in operation of its railroad. However, foreseeability and breach of duty are issues to be decided by the finder of fact once sufficient evidence is presented in a negligence case. *Lyle v. Mladinich*, 584 So. 2d 397, 400 (Miss. 1991).

### III. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING RECOVERY OF HEDONIC DAMAGES.

¶20. The loss of one's enjoyment of life continues to be an area of confusion in the state of Mississippi. The issue to be decided here is whether our state will or will not recognize this type of recovery in a personal injury action, and if so to what extent? Jurisdictions around the country have chosen either; 1) not to recognize the loss of enjoyment of life, 2) recognize the loss of enjoyment of life as a completely separate element considered in addition to pain and suffering, or 3) recognize the loss of enjoyment of life but only as integrated into pain and suffering. *See* e.g., *Elliott v. United States,* 877 F. Supp. 1569 (M.D. Ga. 1992) ; *Loth v. Truck-A-Way Corp.,* 60 Cal. App. 4th 757, 70 Cal. Rptr. 2d 571 (Cal. Ct. App. 1998); *Florida Patient's Compensation Fund v. Von Stetina,* 474 So.2d 783,792 (Fla. 1985)(recognizing as separate from pain and suffering); *Brookshire Bros., Inc. v. Wagnon,* 979 S.W.2d 343, 353 (Tex. Ct. App. 1998) (recognizing as an element of pain and suffering); *Kirk v. Washington State Univ.,* 746 P.2d 285 (Wash. 1987). Today we decide to follow the jurisdictions which recognize the loss of enjoyment of life.

¶21. The Court of Appeals has pointed out that there are no Mississippi cases directly on point on the question of whether loss of enjoyment of life is an element of damages in a survival personal injury action. *KM Leasing, Inc. v. Butler*, 749 So.2d 310 (Miss. Ct. App. 1999). While we have not declared how to classify the loss of enjoyment of life, we have made clear that the damages to a particular plaintiff in a personal injury action should be decided on a case-by-case basis. *Kinnard v. Martin,* 223 So. 2d 300, 302 (Miss. 1969); *Mobile & Ohio R.R. v. Carpenter*, 104 Miss. 706, 61 So. 2d 693 (1913); *Southern R.R. v. Kendrick*, 40 Miss. 374 (1866). We allowed recovery for all damages including those for partial loss of enjoyment of life in *W. J. Runyon & Son, Inc. v. Davis*, 605 So.2d 38, 50 (Miss. 1992). This Court has also recognized damages for the loss of enjoyment of life in a number of other personal injury cases. *See Flight Line, Inc. v. Tanksley*, 608 So.2d 1149, 1163 (Miss. 1992) (recognized loss of enjoyment of life as a factor in determining jury award); *General Motors Corp. v. Jackson*, 636 So.2d 310, 315 (Miss. 1994) (holding award that included damages for loss of enjoyment of life not excessive); *Atwood v. Lever*, 274 So.2d 146, 149 (Miss. 1973) (jury instruction on damages for loss of enjoyment of life recognized but found no facts in record to support award of damages based on loss of enjoyment of life.), *Haywood v. Collier*, 724 So.2d 1105, 1107 (Miss. Ct. App. 1998).

¶22. Furthermore, we said that an injured plaintiff enjoys the right to damages such as will compensate him for all of his losses, past and future and is entitled to the present worth of all that has been forced upon him. *Davis*, 605 So.2d at 50. It was not, however, specified as to whether damages for loss of enjoyment of life were to be considered as part of or separate from those for pain and suffering.

¶23. The loss of enjoyment of life should be fully compensated and should be considered on its own merits as a separate element of damages, not as a part of one's pain and suffering. We decide to follow other jurisdictions which have held that damages for loss of enjoyment of life compensate the injured person for the limitations placed on his or her ability to enjoy the pleasures and amenities of life. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 715-16 (Tenn. Ct. App. 1999) (citing *Thompson v. National R.R. Passenger Corp.*, 621 F.2d 814, 824 (6th Cir. 1980)). This type of damage relates to daily life activities that are common to most people. There are numerous activities that courts have held constitute daily life activities: going on a first date, reading, debating politics, the sense of taste, recreational activities, and family activities. *See generally* **Nemmers v. United States**, 681 F. Supp. 567, 575 (C.D. Ill. 1988); *Dyer v. United States*, 551 F. Supp. 1266, 1281 (W.D. Mich. 1982); *Sweeney v. Car/Puter Int'l Corp.*, 521 F. Supp. 276, 288 (D.S.C. 1981); *Overstreet*, 4 S.W.3d at 716. Pain and suffering encompasses the physical and mental discomfort caused by an injury, such as anguish, distress, fear, humiliation, grief, shame, and worry. *Overstreet*, 4 S.W.3d at 715. A permanent injury differs from pain and suffering in that it is an injury from which the plaintiff cannot completely recover. *Id.* (citing *Jordan v. Bero*, 210 S.E.2d 618, 630 (W. Va. 1974)).

¶24. Evidence was presented at trial that prior to the accident Mr. Johnson enjoyed hunting, fishing, and yard work. As a result of the accident, Johnson suffered brain injury, a cracked pelvis, bruised lungs, pneumonia, and was forced to move to an inpatient rehabilitation center for close to a year. Johnson also testified as to his inability to enjoy those activities in which he participated prior to the accident. His wrist has been damaged and one of his fingers remains crooked. Furthermore, there is evidence that Johnson has a diminished ability to speak. We find that the testimony of Mr. Johnson, Ms. Johnson, the physical therapist, the rehab specialist, the speech therapist, are ample to support damages for Johnson's lost ability to enjoy his prior life style. Johnson has demonstrated that he is conscious of his lost enjoyment of life's pleasures, and our tort system should compensate him for these losses. Perhaps most telling about the effects of the accident on Johnson's life is this testimony from Johnson's daughter, Angela: "I watched an active man sit in a wheelchair all day. I watched an articulate man who took pride in his vocabulary struggle to get one word out. And I have watched a person that was always happy look sullen and sad, stare out into space."

¶25. It is apparent that Johnson is no longer the person he was prior to the accident. We hold today that these restrictions are significant enough to warrant compensation as a separate and distinct element of damages.

¶26. We believe jury instruction P-11A was correctly given. The instruction at issue reads as follows:

> The Court instructs the jury that "damages" is the word which expresses in dollars and cents the injuries sustained by a plaintiff. The damages to be assessed by a jury in a personal injury case cannot be assessed by any fixed rule, but you are the sole judges as to the measure of damages in any case. Should your verdict be for the plaintiffs, you may consider the following factors in determining the amount of damages to be awarded as may be shown by a preponderance of the evidence:...5.) Loss

of enjoyment of Life, **and** 6.) The value of past, present and future physical pain and suffering and resulting mental anguish, if any.

This instruction adequately separates loss of enjoyment of life damages from pain and suffering. The instruction was a simple, appropriate way to place before the jury the issue of loss of the enjoyment of life as a distinct and separate element of damages which cannot be considered as pain and suffering. The trial court did not err in granting this instruction.

## IV. WHETHER THE CIRCUIT COURT ERRED AND ABUSED ITS DISCRETION IN ALLOWING EXPERT TESTIMONY REGARDING LOSS OF ENJOYMENT OF LIFE.

¶27. At trial, KCS filed a motion in limine in an effort to exclude the testimony of Dr. Stan Smith. The claim was that an expert must have acceptance in the particular field to which it belongs, and, moreover, that the method by which his opinion was reached was not generally accepted in his field of expertise as required by M.R.E. 702. On appeal, KCS argues that the trial court erred in denying its motion in limine.

¶28. The admission of testimony is within the sound discretion of the trial court. *Roberts v. Grafe Auto Co.,* 701 So. 2d 1093, 1098 (Miss. 1997). Unless we conclude that the discretion was arbitrary and clearly erroneous, the decision will stand. *Id.* (citing *Seal v. Miller*, 605 So. 2d 240, 243 (Miss. 1992); *Hooten v. State*, 492 So. 2d 948, 950-51 (Miss. 1986)).

¶29. Under Mississippi Rule of Evidence 702, expert testimony should be admitted only when the trial court can affirmatively answer a two-fold inquiry. First, the witness must be qualified as an expert because of the knowledge, skill, experience, training, or education he or she possesses. M.R.E. 702. *See also Watkins v. U-Haul Int'l, Inc*, 770 So. 2d 970, 973 (Miss. Ct. App. 2000). Second, the witness's scientific, technical, or other specialized knowledge must assist the trier of fact to understand or decide a fact in issue. *Id.* Rule 702 "does not relax the standard that the expert must indeed be qualified to speak an opinion on a matter within his alleged field of knowledge," nor does it "relax the requirement that the scientific principle from which the expert's opinion is derived 'must be sufficiently established to have gained general acceptance in the particular field to which it belongs'" M.R.E. 702 cmt. (quoting *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923)).

¶30. In *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court held that Federal Rules of Evidence 702 supersedes the former "general acceptance" test set forth in *Frye*. Mississippi, however, has not adopted the *Daubert* test, and continues to utilize the "general acceptance" test enumerated in *Frye* even after the adoption of Mississippi Rule of Evidence 702. *Gleeton v. State*, 716 So.2d 1083, 1087 (Miss. 1998) (citing *Crawford v. State*, No. 716 So. 2d 1028, 1046 (Miss. 1998); *Polk v. State*, 612 So. 2d 381, 390 (Miss. 1992)).

¶31. In *Hooten v. State*, 492 So.2d 948 (Miss. 1986), we reiterated the rule for expert witnesses stating, "it is not necessary that one offering to testify as an expert be infallible or possess the highest degree of skill; it is sufficient if that person possesses peculiar knowledge or information regarding the relevant subject matter which is not likely to be possessed by a layman." *Id.* at 948 (citing *Henry v. State*, 484 So.2d 1012, 1015 (Miss. 1986)).

¶32. Johnson contends that Smith's testimony assisted the trier of fact in determining the amount of loss suffered as a result of KCS's negligent conduct and thus meets the standards set forth in MRE 702 and

*Frye*. We agree. Although there is some honest dispute as to whether Dr. Smith's testimony was generally accepted in his field, the question of whether the proffered witness had obtained the required degree of specialized knowledge within a particular field is a matter within the sound discretion of the trial court, and unless there is abuse of that discretion, his determination will not be disturbed on appeal. *Pharr v. Anderson*, 436 So.2d 1357, 1359 (Miss. 1983)(collecting authorities).

¶33. The trial court did not abuse its discretion by allowing Dr. Smith to testify as he had qualified as an expert in over 100 cases. Three affidavits of noted economists were tendered opining that, "[c]alculations of loss of enjoyment of life damages are now widely accepted in the field of forensic economics." The railroad produced its own expert who testified that Dr. Smith's conclusions were unreliable, invalid, and speculative. It is the jury's duty to determine which expert's testimony is to be given the greater weight. We do not find today that the trial court abused its discretion by allowing this testimony.

## CONCLUSION

¶34. Having held that damages for loss of enjoyment of life are recoverable as a separate form of damages, and that admission of the testimony of Smith was not error, we affirm the judgment of the trial court.

¶35. **AFFIRMED.**

**PITTMAN, C.J., BANKS AND McRAE, P.JJ., MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**