# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00117-SCT

*CHARLES M. DORROUGH, JR., M.D.*
*v.*
*EMANUEL WILKES, SR., AND EMANUEL WILKES, JR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/20/2000 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM O. LUCKETT, JR. |
| | ROBERT MICHAEL TYNER |
| | JONATHAN MASTERS |
| ATTORNEYS FOR APPELLEES: | HIAWATHA NORTHINGTON, III |
| | PRECIOUS TYRONE MARTIN |
| | ISAAC K. BYRD, JR. |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 05/23/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/13/2002 |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1. The case before this Court arises out of a wrongful death medical malpractice action. On May 18, 1994, Emanuel Wilkes, Sr. and Emanuel Wilkes, Jr. (the Wilkeses) filed a complaint against Dr. Charles M. Dorrough, Jr. (Dorrough) and Bolivar County Hospital (BCH).[1] The complaint alleged that Dorrough and BCH breached their duty to provide proper care to Gwendolyn Johnson-Wilkes (Gwendolyn) at BCH on June 3, 1993. This alleged negligence culminated in Gwendolyn's death. Gwendolyn was the thirty-nine-year-old wife and mother of Emanuel Wilkes, Sr. and Emanuel Wilkes, Jr., respectively. Dorrough and BCH denied any negligence in the case. On September 5 through 7 , 2000, a trial was conducted in the

Circuit Court of Sunflower County. The jury returned a verdict in favor of the Wilkeses and assessed damages in the amount of $1,500,000.00 against Dorrough. Judgment was entered accordingly on September 20, 2000. The trial court denied Dorrough's motion for judgment notwithstanding the verdict and in the alternative a motion for new trial. From this ruling, Dorrough now appeals to this Court. We find that Dorrough's arguments are without merit and affirm the judgment entered on the jury verdict of $1,500,000.00.

## FACTS

¶2. Prior to a visit to Mississippi, Gwendolyn complained of a fluttering heart. She visited her brother-in-law, Dr. Charles Rogers (Rogers), in Columbus, Georgia. Rogers examined Gwendolyn and told her to see him after her trip to Mississippi if she experienced any further problems.

¶3. On June 2 and 3, 1993, Gwendolyn traveled from her home in Georgia to her mother's house in Shaw, Mississippi. Gloria Rogers (Gloria), O.D., accompanied her sister, Gwendolyn, to Mississippi along with other family members and friends. On June 3, 1993, Gwendolyn felt lightheaded and like her heart was racing. Gloria brought Gwendolyn to the BCH just after noon.

¶4. Dorrough treated Gwendolyn while she was at the hospital. He diagnosed her as suffering from supreventricular tachycardia (an increase in heart rate above the ventricle). Dorrough stated that a sinus tachycardia is a form of supreventricular tachycardia. Gwendolyn had blood tests and an EKG performed. She also was given Verapamil IV medicine to slow her respiratory rate. As Gwendolyn was discharged, she was told to follow-up with her physician and to return to the emergency room if she experienced any further problems during her stay in Mississippi.

¶5. In the early morning hours of June 4, Gwendolyn experienced more problems. However, she returned to Georgia. Upon arrival in Columbus, Georgia, Gwendolyn was admitted to the Medical Center. She complained of dizziness, shortness of breath and chest tightness and stayed at the Medical Center for over five hours. She was later transferred to St. Francis Medical Center in Columbus with the suspected diagnosis of acute pulmonary embolus. At St. Francis, Gwendolyn underwent emergency surgery. Unfortunately, the surgery was unsuccessful, and Gwendolyn died on June 4, 1993, of a pulmonary embolus.

¶6. The Wilkeses had two expert witnesses, Dr. Michael Vance (Vance) and Dr. Jay Falk (Falk), and Dorrough had one expert witness, Dr. Michael Dupuis (Dupuis). The jury heard conflicting testimony from the expert witnesses concerning the events leading up to Gwendolyn's death. Vance testified that Dorrough did not meet the minimum standard of care based on the fact that there was a sustained rapid heart rate and abnormal laboratory findings. Vance stated that Gwendolyn suffered from sinus tachycardia and not supreventricular tachycardia. Vance defined sinus tachycardia as "an increase in pulse rate in response to an underlying disease state." He testified that the two terms are not the same.

¶7. Falk testified that, in his opinion, Dorrough misdiagnosed Gwendolyn. He believed that she suffered from sinus tachycardia and not supreventricular tachycardia. He testified that the two terms are not the same. Falk stated that in his opinion if Gwendolyn had been diagnosed and given the drug Heparin then she would not have embolized (clotted) and she would have survived. Further, he stated that most emboli (clots) come from the lower extremities and pelvis region.

¶8. Dupuis testified that Dorrough did not fall below the standard of care. He testified that Gwendolyn had a rare condition in that the clot that ultimately killed her was in the heart and did not come from the legs. In addition, he stated that Dorrough would not have known about the clot without an echocardiogram and Gwendolyn's presentation gave no indication that this procedure needed to be performed. Dupuis stated that Gwendolyn's death was unavoidable despite the best of care.

¶9. By a 9-3 vote, the jury rendered a verdict in favor of the Wilkeses and assessed $1,500,000.00 in damages against Dorrough. After judgment was entered based on the verdict, the trial court denied motions for JNOV and new trial. Dorrough appeals to this Court and raises the following issues:

> **1. Whether the trial court erred in allowing the jury to consider hedonic damages (i.e., loss of enjoyment of life).**

> **2. Whether the Wilkeses' use of peremptory challenges violated Dorrough's 14th Amendment Right of Equal Protection pursuant to *Batson*.**

> **3. Whether the award of damages was unsupported by credible or sufficient evidence; was beyond all measure, unreasonable and outrageous and shocks the judicial conscience of this Court.**

> **4. Whether the objections of counsel for Wilkeses constituted attorney misconduct and prejudiced the jury against Dorrough.**

## DISCUSSION

### 1. Hedonic Damages in a Wrongful Death Suit.

¶10. Dorrough argues that the trial court erred in allowing the jury to consider hedonic damages (loss of enjoyment of life) in this wrongful death suit. In the alternative, Dorrough argues that even if the hedonic damage instruction was proper, the Wilkeses failed to present evidence that Gwendolyn suffered a debilitating injury which persisted for a period of time before her death.

¶11. Clearly, this Court has allowed hedonic damages in personal injury cases. *See **Kansas City S. Ry. v. Johnson**,* 798 So.2d 374, 380-82 (Miss. 2001); ***Thomas v. Hilburn***, 654 So.2d 898, 903 (Miss. 1995). The Court of Appeals addressed the issue of hedonic damages in ***K.M. Leasing, Inc. v. Butler***, 749 So.2d 310, 320 (Miss. Ct. App. 1999), and held the following:

> We read ***Upchurch***[2] narrowly to hold only that hedonic or loss of enjoyment of life damages are not allowable in a wrongful death action absent some evidence that the decedent suffered a debilitating injury which persisted for a period of time prior to the death and that in that case, evidence of a loss of enjoyment of life damages might be admissible.

¶12. In the case sub judice, Gwendolyn went to BCH for treatment by Dorrough on June 3, 1993, from 12:20 to 3:03 p.m. Gwendolyn went to the Medical Center in Columbus on June 4, 1993, at approximately 11:30 and was transferred to St. Francis Medical Center. While at St. Francis, Gwendolyn underwent surgery for her condition, but died around 8 p.m. After discharge from BCH, Gwendolyn was alive for approximately 29 hours. She was aware and conscious after the visit to BCH. Clearly, the testimony and medical reports show that Gwendolyn suffered from her condition and that she was conscious and aware of

her loss of enjoyment of life. Accordingly, the evidence does support an award of hedonic damages. This issue is without merit.

### 2. *Batson* Challenge.

¶13. Dorrough next claims that his fourteenth amendment right of equal protection was violated by the Wilkeses' exercise of peremptory challenges. The jury was composed of nine African-American jurors and three white jurors. The Wilkeses and their counsel are also African-American. Dorrough argues that the Wilkeses used their peremptory challenges to strike white jurors and ensure that nine African-American jurors were seated. The effect of these strikes was, as Dorrough claims, that the African-American jurors found in favor of the Wilkeses and the white jurors found in favor of Dorrough.

¶14. Dorrough further asserts that the ***Batson*** race-neutral standard is too lenient and easily overcome in order to protect fundamental rights. Even with the ***Batson*** requirements, Dorrough claims his constitutional rights were violated. He invites this Court to abolish peremptory challenges in civil trials.

¶15. A reversal is warranted only if the factual findings of the trial judge appear to be "clearly erroneous or against the overwhelming weight of the evidence." ***Tanner v. State***, 764 So.2d 385, 393 (Miss. 2000) (citing ***Stewart v. State***, 662 So.2d 552, 558 (Miss. 1995)).

¶16. In ***Batson v. Kentucky***, 476 U.S. 79, 106 S.Ct.1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that a peremptory challenge cannot be used to exclude venire-persons from jury service based on their race. A peremptory challenge based on race constitutes a violation of equal protection. ***Id***. at 98. Since the ***Batson*** ruling in 1986, the United States Supreme Court and this Court have extended the use of the rule to other circumstances. *See* ***J.E.B. v. Alabama ex rel. T.B.***, 511 U.S. 127, 114 S. Ct. 1419, 1422, 128 L.Ed.2d 89 (1994) (***Batson*** extended to peremptory challenges based on gender); ***Georgia v. McCollum***, 505 U.S. 42, 54, 112 S.Ct. 2348, 2356, 120 L.Ed.2d 33 (1992) (defendant's use of peremptory challenges based on racial consideration was prohibited); ***Edmonson v. Leesville Concrete Co.***, 500 U.S. 614, 628-29, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (***Batson*** extended to civil cases); ***Powers v. Ohio***, 499 U.S. 400, 409, 111 S. Ct. 1364, 1373, 113 L.Ed.2d 411 (1991) (race-based challenges by the State without regard to the race of the defendant was prohibited); ***Thorson v. State***, 721 So.2d 590, 594 (Miss. 1998) (***Batson*** extended to peremptory strikes based on religion).

¶17. The necessary steps to resolve a peremptory challenge based upon ***Batson*** are cited in ***Stewart v. State***, 662 So.2d 552, 557-58 (Miss. 1995), as follows:

1. The party objecting to the peremptory challenge must first make a prima facie showing that race was the criteria for the exercise of the peremptory challenge.

2. If this initial showing is successful, the party desiring to exercise the challenge has the burden to offer a race-neutral explanation for striking the potential juror.

3. The trial court must then determine whether the objecting party has met their burden to prove there has been purposeful discrimination in the exercise of peremptory challenges.

¶18. As cited above, the United States Supreme Court in ***Edmonson*** extended ***Batson*** to civil litigation. A review of the record reveals the Dorrough requested a race-neutral reason for only one prospective juror,

P-3 Reginald Shurden. The Wilkeses struck Shurden because he grew up with Dorrough's son. No further objection was made to this or any other peremptory strikes exercised by the Wilkeses. This Court held that "[i]f no contemporaneous objection is made, the error, if any, is waived." **Walker v. State**, 671 So.2d 581, 597 (Miss. 1995) (citing **Foster v. State**, 639 So.2d 1263, 1270 (Miss. 1994)). Applying the law to the case sub judice, Dorrough has waived his objection on appellate review and is procedurally barred on this issue. Further, the United States Supreme Court and this Court have not abandoned peremptory challenges in civil trials.

¶19. Accordingly, this issue is without merit.

### 3. Damages.

¶20. Dorrough asserts that the verdict of the jury was not supported by credible or sufficient evidence. Further, he argues that the verdict was so excessive as to manifest that the jury was biased or prejudiced. Comparing the absence of support for damages to the jury verdict, Dorrough claims, should shock the conscience of this Court. He requests that the award be reversed and this case remanded for a new trial.

#### a. New Trial/ Weight and credibility of the evidence

¶21. "[A] new trial may be granted when the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty jury instruction, or when the jury has departed from its oath and its verdict is a result of bias, passion and prejudice." **Roussel v. Robbins**, 688 So.2d 714, 723-24 (Miss. 1996).

¶22. This Court applies the following standard to review an assertion that a jury's verdict is against the overwhelming weight of evidence and merits a new trial:

> The grant or denial of a motion for new trial is and always has been a matter largely within the sound discretion of the trial judge. The credible evidence must be viewed in the light most favorable to the non-moving party. The credible evidence supporting the claims or defenses of the non-moving party should generally be taken as true. When the evidence is so viewed, the motion should be granted only when upon a review of the entire record the trial judge is left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice. Our authority to reverse is limited to those cases wherein the trial judge has abused his discretion.

**Green v. Grant**, 641 So.2d 1203, 1207-08 (Miss. 1994) (citing **Anchor Coatings, Inc, V. Marine Indus. Residential Insulation, Inc.**, 490 So.2d 1210, 1215 (Miss. 1989)). *See also* **Roussel v. Robbins**, 688 So.2d at 723-24 (abuse of discretion standard); **C&C Trucking Co. v. Smith**, 612 So.2d 1092, 1099 (Miss. 1992)(abuse of discretion standard). When evidence is in conflict, the jury is the sole judge of both the credibility of a witness and the weight of his testimony. **Weathersby Chevrolet Co. v. Redd Pest Control Co.,** 778 So.2d 130, 133 (Miss. 2001). *See also* **Wilmoth v. Peaster Tractor Co. of Lexington, Inc.**, 544 So.2d 1384, 1386 (Miss. 1989).

¶23. In the case sub judice, the verdict by the jury was supported by the weight of the evidence. The jury was presented with conflicting testimony concerning the alleged negligence of Dorrough. The Wilkeses had expert witnesses who stated that Dorrough's diagnosis and treatment fell below the standard of care. In addition, both Vance and Falk testified that in their opinion, Gwendolyn was suffering from sinus tachycardia and not supreventricular tachycardia. Vance cited the fact that there was a sustained rapid heart

rate and abnormal laboratory findings. Falk testified that in his opinion if Gwendolyn had been diagnosed and given the drug Heparin then she would not have embolized (clotted) and she would have survived.

¶24. Dupuis testified that Dorrough's diagnosis and treatment did not fall below the standard of care. He testified that Gwendolyn had a rare condition. He maintained that the clot that killed her formed in the heart rather than the legs. The only way Dorrough could have known of the condition was to perfor and echocardiogram and Gwendolyn's presentation upon arriving at the emergency room did not indicate that the procedure should be performed. Dupuis stated that Gwendolyn's death was unavoidable despite the best of care.

¶25. It must be remembered that the jury is the sole judge of the weight and credibility of the witnesses. *Weathersby Chevrolet Co. v. Redd Pest Control Co.* 778 So.2d at 133. Conflicts in the evidence are resolved by the jury. *Jackson v. Griffin*, 390 So.2d 287, 289 (Miss. 1980). There was a jury question as to whether Dorrough's diagnosis and treatment met the standard of care and directly and proximately caused the death of Gwendolyn. The jury determined that Dorrough was liable for the death of Gwendolyn and awarded damages. After viewing the credible evidence in the light most favorable to the non-moving party and taking the credible evidence supporting the claims or defenses of the non-moving party as true, we find that the jury decision is supported by the record and not against the overwhelming weight of the evidence presented at trial. Accordingly, the trial judge did not abuse his discretion, and no new trial is warranted.

### b. Excessive verdict

¶26. Dorrough asserts that the only damages shown at trial are $39,000.00 in medical expenses and $300,000.00 in loss of services. Further, he maintains that the jury was given a limiting instruction on the loss of wages by Gwendolyn. However, the jury returned a verdict of $1,500,000.00. This sum was the same amount proposed by the Wilkeses' forensic economist indicating that the jury failed to follow the trial court's limiting instruction. In addition, Dorrough cites the fact that Emanuel, Sr. married six months after the death of Gwendolyn and that Emanuel, Jr. was a grown man, as limiting an award for loss of society and companionship. Further, he claims there was no evidence to support an award of damages for pain and suffering.

¶27. The standard of review to determine whether a jury verdict is excessive in a particular case is as follows:

> The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such as manifestly show the Jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, where they have no standard by which to ascertain the excess.

*Wells Fargo Armored Serv. Corp. v. Turner*, 543 So. 2d 154, 158 (Miss. 1989)(citing *Detroit Marine Eng'g v. McRee*, 510 So.2d 462 (Miss. 1987)). However, a jury verdict cannot be disturbed simply because the amount of damages seems to be either "too high" or "too low." *C & C Trucking Co. v. Smith*, 612 So.2d at 1106.

¶28. The jury was given a damage instruction which reads, in part, as follows:

> The Court instructs the Jury that if you return a verdict in the favor of the estate of Gwendolyn Wilkes,

then you must determine the amount of her losses and damages if any.

You are instructed that in arriving at a dollars and cents amount of Gwendolyn Wilkes' losses, you must consider and include the following losses, to the extent that you believe, from a preponderance of the evidence that such losses were proximately caused or contributed to by the negligent acts of the Defendant.

1. The value of any past medical bills incurred by Gwendolyn Wilkes;

2. The value of any physical pain and suffering suffered by Gwendolyn Wilkes;

3. The value of any mental anguish, loss of companionship, love and society caused by the death of their wife and mother suffered by Emanuel Wilkes, Sr. and Emanuel Wilkes, Jr.;

4. The value of any burial cost incurred by the Estate of Mrs. Gwendolyn Wilkes; and

5. The loss of her enjoyment of life.

6. The value of Mrs. Wilks [sic] household services....

In addition, the jury was given the following instruction, CC-6, regarding the net cash value of the life of Gwendolyn:

The testimony of Mr. Robert Johnson regarding the net cash value of the life of Ms. Gwendolyn Wilkes has been stricken and you the jury are instructed to disregard any such testimony. His testimony with regard to her life expectancy and regarding household services are not stricken and may be given such weight as you the jury determine.

¶29. This Court has held that "a jury's verdict is a finding of fact. Unless we can say that no rational juror could on this proof have assessed damages...the award must be left undisturbed." *City of Jackson v. Locklar*, 431 So.2d 475, 480 (Miss. 1983).

¶30. Dorrough states that the medical fees are $39,000.00 and loss of services are $300,000.00. Both Emanuel Sr. and Jr. testified to their loss at trial. The jury determined the verdict amount based on the testimony presented and the fact that Gwendolyn lost her life. This Court cannot say that no reasonable juror would have awarded the Wilkeses $1,500,000.00 based on the loss of life and the facts presented at trial. Accordingly, we find that the verdict was not so excessive as to shock the conscience of this Court.

### 4. Attorney Misconduct.

¶31. Dorrough asserts that attorneys for the Wilkeses made improper comments during trial which prejudiced the jury. The two comments occurred during the direct and redirect examination of Dorrough's expert witness, Dr. Dupuis, and relate to expert testimony and the trial judge's statement concerning the wording of forms. The two comments are contained in the following exchanges:

1. Expert testimony. (Direct examination).

A. The fact that she had the clot that killed her was actually in her heart, didn't come from her legs.

By Mr. Byrd: I'm going to object to this witness testifying as a family practitioner. He is not a

cardiologist. He's talking about causation from heart. He has not been shown qualified -

By the Court: Mr. Byrd, don't make a statement. He was accepted by you as an expert.

By Mr. Byrd: In emergency medicine and family practice, not cardiology.

By the Court: Overruled. And Mr. Byrd, if you have another statement like that to make, step up here to make it.

2. Judge's statement. (Redirect examination).

Q. Does the word "unconfirmed" and some of the other typing on here appear to be on the form?

A. Yes.

By Mr. Luckett: May I pass it, Your Honor, and let the jury see what he is referring to?

By the Court: You may.

By Mr. Luckett: The ones with the green stickers that I would like the jury to look at.

By the Court: Mr. Luckett, I think it is fair to say you can understand if it is a printed form, that it is on both of them.

By Mr. Luckett: Yes, sir.

By Mr. Byrd: I object to that, Your Honor. That's a comment on the testimony by the judge.

By the Court: No, sir.

By Mr. Byrd: That's a comment on the testimony by the judge.

By the Court: I was trying to avoid passing this to the jury, Mr. Byrd. It was just testified, wasn't it?

By Mr. Luckett: Yes sir, it was.

¶32. The trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect. *Roundtree v. State*, 568 So.2d 1173, 1177 (Miss. 1990). Furthermore, this Court has held that "when the trial judge sustains an objection to testimony and he directs the jury to disregard it, prejudicial error does not result." *Estes v. State*, 533 So.2d 437, 439 (Miss. 1988). The jury is presumed to understand that the court disapproves of any testimony when an objection is sustained. *Id*. at 439. If sustaining the objection alone is considered to be inadequate to remove the alleged prejudicial effect of the objected matter from the minds of the jury, then the court must be requested to instruct the jury to disregard the matter. *Anderson v. Jaeger*, 317 So.2d 902, 906 (Miss. 1975). The jury is presumed to understand that the court disapproves of any testimony when an objection is sustained. *Estes v. State*, 533 So.2d at 439. If opposing counsel does not consider the sustained objection to be adequate, then the trial court should have been requested to instruct the jury to disregard the matter, otherwise there is no error. *Marks v. State*, 532 So.2d 976, 981 (Miss. 1988); *General Motors Corp. v. Pegues*, 738 So.2d 746, 754 (Miss. Ct. App. 1998).

¶33. In the case sub judice, a review of the record reveals that Dorrough made no objection to either comments concerning the expert testimony or the judge's remark. This Court held that "[i]f no contemporaneous objection is made, the error, if any, is waived." *Walker v. State*, 671 So.2d at 597 (citing *Foster v. State*, 639 So.2d at 1270). *Hill v. State*, 432 So.2d 427, 439 (Miss. 1983). An appellate court is under no obligation to review an assignment of error when an objection was not made or when an objection was untimely. *Carr v. State*, 655 So.2d 824, 832 (Miss. 1995). The contemporaneous objection rule is in place to enable the trial court to correct an error with proper instructions to the jury whenever possible. *Gray v. State*, 487 So.2d 1304, 1312 (Miss. 1986) (citing *Baker v. State*, 327 So.2d 288, 292-93 (Miss. 1976)). Accordingly, this issue is procedurally barred.

¶34. Procedural bar aside, the transcript reveals that the trial judge overruled and admonished the Wilkeses' counsel for comments regarding the qualifications of the expert testimony. In addition, the trial judge denied making a comment on the testimony and in effect denied the Wilkeses' objection concerning the judge's alleged comment on testimony. The comments by the Wilkeses' counsel created no prejudice. The trial judge denied the objections and even admonished the Wilkeses' counsel before the jury. The error, if any, is harmless. Accordingly, this issue is without merit.

## CONCLUSION

¶35. For these reasons, the circuit court's judgment is affirmed.

¶36. **AFFIRMED**.

> **PITTMAN, C.J., McRAE, P.J., WALLER, DIAZ, CARLSON AND GRAVES, JJ., CONCUR. SMITH, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY COBB, J.**

> **SMITH, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶37. I agree with the majority's determination to affirm the jury's finding of liability against Dr. Durrough. However, I disagree with the determination that the Wilkeses properly recovered hedonic damages. For this reason, I respectfully dissent.

¶38. The majority concludes that the trial court properly instructed the jury that it could award the Wilkeses hedonic damages. The majority finds as support for a finding of hedonic damages that the decedent "suffered from her condition and that she was conscious and aware of her loss of enjoyment of life." (Majority Op. ¶12). The record is entirely devoid of any evidence that the decedent was aware of her inability to enjoy activities she participated in prior to her injury. The fact that the decedent was conscious for a period, no matter how long or short, and may have experienced pain and suffering during that time does not constitute proof sufficient to allow recovery of hedonic damages. As this Court explained in *Kansas City S. Ry. v. Johnson*, 798 So. 2d 374, 381 (Miss. 2001), hedonic damages compensate an injured party for the limitations placed on his or her ability to enjoy the pleasures and amenities of life. The majority assumes that because the decedent was conscious for a period and experienced pain and suffering, she necessarily proved hedonic damages.

¶39. This Court has clearly stated that damages for loss of enjoyment of life are "separate and distinct" from damages for pain and suffering. *Id*. at 381. Hedonic damages compensate for limitations placed on the

injured party's ability to enjoy the pleasures and amenities of life such as reading, sense of taste, recreational activities and family activities. *Id*. at 381. Pain and suffering encompasses physical and mental discomfort caused by the injury, such as anguish, distress, fear, humiliation, grief, shame, and worry. *Id.* There was simply no testimony that the decedent was aware of her inability to enjoy the activities she participated in prior to her injury.

¶40. Because the trial court erred in instructing the jury that it could award the Wilkeses hedonic damages, I would reverse and remand for a new trial on damages.

    **COBB, J., JOINS THIS OPINION.**

1. The suit against Bolivar County Hospital was later dismissed.

2. *Upchurch v. Rotenberry*, 1998 WL 718243 (Miss. Ct. App. 1998), was later withdrawn and superseded by 761 So.2d 199 (Miss. 2000) in which this Court did not reach the issue of hedonic damages.